# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| FLOSSIE BYRD, WILLIAM AND BILLIE HICKEY, DEBORAH HOWARD, AND JEFFREY STEVENSON, individually and on behalf of all others similarly situated, | Case No._____ |
| *Plaintiffs*, | **CLASS ACTION COMPLAINT** |
| *v.* | **DEMAND FOR JURY TRIAL** |
| THE CITY OF DETROIT, a municipal corporation; OFFICE OF THE CHIEF FINANCIAL OFFICER OF THE CITY OF DETROIT, a municipal entity; OFFICE OF THE ASSESSOR OF THE CITY OF DETROIT, a municipal entity; MICHAEL DUGGAN, in his official capacity as Mayor of the City of Detroit; ALVIN HORHN, in his official capacity as City of Detroit Assessor; WAYNE COUNTY, a municipal corporation; W. HOWARD MORRIS, in his official capacity as Commissioner of the State Tax Commission; LEONARD D. KUTSCHMAN, in his official capacity as Commissioner of the State Tax Commission; DAVID A. BUICK, in his official capacity as Executive Director of the State Tax Commission, | |
| *Defendants*. | |

## CLASS ACTION COMPLAINT

1.      In 2017, just as the City of Detroit completed a wholesale reappraisal of all residential property more than a half-century overdue, the City failed to notify any Detroit homeowners of their brand-new property assessments until it became virtually impossible for any homeowner to appeal the determination.  As a result, Detroit homeowners that year had no choice but to accept the assessment they were given and the property tax bill that would follow.  The City's failure eviscerated the due process rights of every Detroit homeowner in one blow.

2.      By denying homeowners an opportunity to appeal and lower frequently over-assessed property taxes, the Detroit government—including the City of Detroit; the Detroit Offices of the Chief Financial Officer and Assessor; and Mayor Michael Duggan and Assessor Alvin Horhn, acting in their official capacities (collectively the "Detroit Defendants")—compounded a well-documented crisis that has plagued Detroit for years, leaving many homeowners no recourse but to pay more than they should owe, face delinquency, or even fall prey to property tax foreclosure.

3.      Michigan's government, under the auspices of the State Tax Commission ("STC"), assumed control of Detroit's flawed property tax assessment process from 2014 through 2017.  As a result, State Tax Commissioners W. Howard Morris and Leonard D. Kutschman, and STC Executive Director David A. Buick,

all acting in their official capacities (collectively the "Michigan Defendants"), bear equal responsibility for the systematic denial of due process in 2017.

4.      Detroit homeowners must follow strict procedures and deadlines to exercise their right to appeal their annual property tax assessment. Detroit and Michigan law, taken together, requires that an assessment appeal must run through three successive tiers of administrative review: (1) the Board of Assessors, (2) the Board of Review, and finally (3) the Michigan Tax Tribunal.  Detroit's ordinances provide that homeowners who fail to complete the first step, appeal to the Board of Assessors, forfeit any appeal at any level for a given tax year.[1]  Detroit further mandates that all appeals before the Board of Assessors must be filed by February 15 of each year.[2]  Notices sent very near or even after that date make an appeal impossible, even if one's property has been unlawfully over-assessed.

5.      The Detroit Defendants left all Detroit homeowners on the wrong side of this rigid appeals process in 2017.  That year, when, at the Michigan Defendants' direction, the City completed its first wholesale residential reappraisal in 60 years, every homeowner was to receive a brand-new assessment and a corresponding

---

[1] *See* M.C.L. § 205.731 *et seq.*; Detroit, Mich., Code of Ordinances § 44-4-3 (2019); *Fink v. City of Detroit*, 124 Mich. App. 44 (Mich. Ct. App. 1983).

[2] Detroit Code of Ordinances § 44-4-3(a) ("Any person considering themselves aggrieved by reason of any assessment may make complaint on or before February 15th . . . .").

notice of their assessment and right to appeal.[3] But the Detroit Defendants delayed sending notices to *all* Detroit homeowners, mailing more than 260,000 notices no earlier than February 14, 2017. Knowing they sent all notices late, the Detroit Defendants made halfhearted—and constitutionally inadequate—attempts to remedy the situation that sowed layer upon layer of legal error and public confusion. The litany of missteps the Detroit Defendants took severely exacerbated the resulting due process violation in 2017.

6. The Detroit Defendants' failure to timely and adequately notify homeowners of their property tax assessments in 2017 stifled all Detroit homeowners' opportunity to appeal their new assessments and systematically denied them due process guaranteed by the United States and Michigan Constitutions. The Michigan Defendants, as overseers of Detroit's assessments in 2017, are likewise responsible for the citywide due process violations that year.

7. All named Plaintiffs—Deborah Howard, Flossie Byrd, William and Billie Hickey, and Jeffrey Stevenson—are Detroit homeowners who received deficient property tax assessment notices in 2017 and were illegally precluded from appealing. Plaintiffs assert claims for injunctive relief under 42 U.S.C. § 1983 on

---

[3] When the State assumes jurisdiction over the assessment roll, as happened in Detroit from 2014 to 2017, Michigan law requires that "a notice of the new assessment and new taxable value [be mailed] to each owner" after the locality completes the assessment. M.C.L. § 211.10f(3).

behalf of themselves and a class of all similarly situated homeowners who received inadequate assessment notices for their residences in 2017 that made an appeal virtually impossible.  They seek an order (1) declaring that their constitutional right to due process was violated through lack of timely notice of their property tax assessments and subsequent inability to appeal those assessments in 2017; (2) requiring the Detroit Defendants to allow members of the class to appeal their 2017 property taxes retroactively; and (3) requiring the Detroit Defendants (and, to the extent they take future responsibility for Detroit assessments, the Michigan Defendants) to comport with their constitutional due process obligations by ensuring future assessment notices are sent in enough time to allow homeowners to appeal going forward; or (4) if mailings are delayed, automatically extending appeal deadlines by 30 days after the date of mailing, with clear, individualized notice of the extension given in writing to each residential property owner.

8.     Many Detroit homeowners who were denied notice and an opportunity to appeal their property tax assessments were doubly harmed because Detroit has rampantly over-assessed residential properties in recent years.  When the 2008 financial crisis caused housing values to plummet nationwide, Detroit failed to adjust its property assessments accordingly.  As a result, most of the city's property taxes

remained dramatically inflated.[4]   These excessive taxes violated the Michigan Constitution, which caps property tax assessments at 50 percent of a property's true cash value, otherwise known as fair market value.[5]

9.     Despite the 2017 citywide reappraisal that was supposed to help cure this imbalance, thousands of Detroiters still hold delinquent property tax debt.  A recent study by *The Detroit News* estimates that more than 92 percent of Detroit homes were overtaxed between 2010 and 2016.   At least 59,000 overtaxed households today still owe a combined $153 million in back taxes, interest, and fees.[6]

10.    Plaintiffs Deborah Howard, Flossie Byrd, and Jeffrey Stevenson, Detroit homeowners who received late property tax assessment notices and were overtaxed and/or delinquent in 2017, assert claims for monetary relief under 42 U.S.C. § 1983 on behalf of themselves and all similarly situated homeowners.  In addition to the injunctive relief sought for the overall class of homeowners who were denied notice and an opportunity to appeal, these plaintiffs seek monetary damages

---

[4] *See* Bernadette Atuahene & Christopher Berry, *Taxed Out: Illegal Property Tax Assessments and the Epidemic of Tax Foreclosures in Detroit*, 9 U.C. Irvine L. Rev. 847, 853-54 (2019).

[5] Mich. Const., art. IX, § 3.

[6] Christine MacDonald & Mark Betancourt, *Detroit Homeowners Overtaxed $600 Million*, The Detroit News (Jan. 9, 2020), https://www.detroitnews.com/story/news/local/detroit-city/housing/2020/01/09/detroit-homeowners-overtaxed-600-million/2698518001/.

for the constitutional deprivation of due process that ultimately resulted in their being overtaxed and/or found delinquent.

11.     Wayne County is further complicit in the denial of due process by foreclosing on delinquent homes where their owners had no opportunity to appeal their assessments.  Homeowners who fall delinquent on a given year's property taxes for three years running become subject to property tax foreclosure, in which the City of Detroit turns over the right to collect the delinquent taxes to Wayne County—which in turn puts the property up for auction and subjects the former homeowners to eviction, plus a host of fines, fees, and interest payments.[7]  Through this process, Wayne County has confiscated Detroit homes at historic rates, compounding Plaintiffs' constitutional injuries.

12.     Plaintiff Jeffrey Stevenson's current delinquency from 2017 renders his home subject to Wayne County property tax foreclosure.  He asserts claims for monetary damages and injunctive relief under 42 U.S.C. § 1983 on behalf of himself and all similarly situated homeowners who received deficient notice of assessment in 2017 and whose homes are subject to foreclosure or have already been foreclosed by Wayne County.  In addition to the relief sought for the overall class of homeowners who were denied their constitutional right to notice and an opportunity to appeal, these plaintiffs seek a moratorium on foreclosures from Wayne County

---

[7] M.C.L. §§ 211.78a(2), 211.78k(5).

and damages against Wayne County for the amount it was unjustly enriched by foreclosing on Plaintiffs' properties, including the assessed value of the homes they lost in foreclosure, as well as the amount they had to pay in delinquent taxes, fines, fees, and penalties, with statutory interest.

13.     Michigan state courts have declined to exercise jurisdiction over claims relating to property tax assessments.[8]  The alternative venue—the Michigan Tax Tribunal—lacks the equitable power to order the primary remedies that Plaintiffs and the class of Detroit homeowners they represent are owed.[9]  Moreover, neither Detroit nor Michigan law provides a remedy to address the wholesale denial of due process that occurred in 2017.  Therefore, federal court is Plaintiffs' only venue providing a plain, speedy, and efficient remedy for Detroit's constitutional violations.[10]  This lawsuit seeks remedies for procedural violations Defendants committed concerning the notice of assessment and opportunity to appeal and the consequences thereof, in violation of Plaintiffs' constitutional rights.

---

[8] *See, e.g.*, *MorningSide Cmty. Org. v. Wayne Cty. Treasurer*, No. 336430, 2017 WL 4182985 (Mich. Ct. App. Sept. 21, 2017).

[9] *See, e.g.*, *Marie De Lamielleure Tr. v. Treasury Dep't*, 305 Mich. App. 282, 288 (Mich. Ct. App. 2014) ("[T]he express powers of the Tax Tribunal are those authorized by statute, and the Tribunal has not been invested with equitable powers.").

[10] *See* 28 U.S.C. § 1341.

## PARTIES

14.     Named Plaintiffs Deborah Howard, Flossie Byrd, William and Billie Hickey, and Jeffrey Stevenson are Detroit homeowners who were sent inadequate and untimely individualized property tax assessment notices in 2017. They bring this action individually and on behalf of all similarly situated homeowners who received deficient assessment notices that made an appeal impossible in 2017 (the "Detroit Homeowners Class").

15.     Plaintiffs Deborah Howard, Flossie Byrd, and Jeffrey Stevenson, in addition to receiving deficient notices that made an appeal impossible in 2017, were over-assessed in violation of the Michigan Constitution. They bring this action individually and on behalf of all similarly situated homeowners (the "Overpaying Subclass").

16.     Plaintiffs Flossie Byrd and Jeffrey Stevenson are also delinquent on their property tax payments resulting from over-inflated assessments that they had no opportunity to appeal in 2017. They bring this action individually and on behalf of all similarly situated homeowners (the "Delinquent Subclass").

17.     Plaintiff Jeffrey Stevenson's current delinquency on his 2017 property taxes renders his home subject to foreclosure by Wayne County. Mr. Stevenson brings this action individually and on behalf of all similarly situated homeowners (the "Foreclosure Subclass").

18.     Defendant Michael Duggan occupies the office of Mayor of the City of Detroit and is sued in his official capacity.

19.     Defendant Alvin Horhn occupies the office of Deputy CFO/Assessor of City of Detroit and is sued in his official capacity.

20.     Defendant City of Detroit (also referred to as "Detroit" or the "City") is a municipal corporation organized and existing under the laws of the State of Michigan.

21.     Defendant City of Detroit Office of the Chief Financial Officer (also referred to as "OCFO") is a municipal entity organized and existing under the laws of the State of Michigan.

22.     Defendant City of Detroit Office of the Assessor (also referred to as "Assessment Division") is a municipal entity organized and existing under the laws of the State of Michigan.

23.     Defendant Wayne County is a municipal corporation organized and existing under the laws of the state of Michigan.

24.     Defendant W. Howard Morris occupies the office of State Tax Commissioner and is sued in his official capacity.

25.     Defendant Leonard D. Kutschman occupies the office of State Tax Commissioner and is sued in his official capacity.

26.    Defendant David A. Buick occupies the office of Executive Director of the State Tax Commission and is sued in his official capacity.

## JURISDICTION AND VENUE

27.    This court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) over Plaintiffs' claim brought under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.  This court has jurisdiction under 28 U.S.C. § 1367 (supplemental jurisdiction) over Plaintiffs' claim brought under article I, section 17 of the Michigan Constitution and State of Michigan law because the state-law claims form part of the same case or controversy as the federal claim.

28.    Venue is proper in this court under 28 U.S.C. § 1391 because Defendants City of Detroit, Wayne County, and the Detroit Offices of the Chief Financial Officer and of the Assessor are political subdivisions of the State of Michigan located within the Eastern District of Michigan; Defendants Michael Duggan and Alvin Horhn are officials of the City of Detroit, located in the Eastern District of Michigan, sued in their official capacities; Defendants W. Howard Morris, Leonard D. Kutschman, and David A. Buick, sued in their official capacities, are all officials of the State of Michigan; all individual Plaintiffs named herein reside within the City of Detroit, in the Eastern District of Michigan; all events giving rise to the claims alleged herein occurred in the Eastern District of Michigan; and all

property that is the subject of this action is situated in the Eastern District of Michigan.

29.     The injuries claimed by Plaintiffs named herein occurred and continue to occur in the City of Detroit, in the Eastern District of Michigan.

## STATEMENT OF FACTS

**I.     When Detroit Homeowners Cannot Follow a Rigid and Time-Bound Process, They Forfeit All Rights to Appeal a Tax Assessment**

30.     Michigan law requires cities and townships to assess property values annually.[11]  The assessment forms the basis for how much a homeowner must pay in property tax for that year.

31.     A Detroit homeowner wishing to appeal her property tax assessment, and thereby lower her property taxes, must ordinarily follow a rigid and time-bound process prescribed by interlocking city and state laws.  Failure to follow any step in the process forfeits review at any subsequent level.

32.     The first step in a Detroit property tax assessment appeal begins before the City of Detroit Board of Assessors.  As mandated by the Detroit Code of Ordinances, the Board of Assessors reviews assessment rolls each year between

---

[11] M.C.L. § 211.10(1).

11

February 1 and February 15.[12]  Any appeal to the Board of Assessors must be filed by February 15 of a given year.[13]

33.    The second step in the appeals process takes place before the Detroit Board of Review.  Appeal to the Board of Assessors by the February 15 deadline is mandatory before a homeowner may appeal to the Board of Review.[14]  Assuming a homeowner has completed that first step, appeal to the Board of Review "shall be filed on or before the second Monday in March and may not be filed thereafter."[15] In 2017, this deadline fell on March 13.

34.    The final step in the assessment appeals process lies before the Michigan Tax Tribunal.  The Michigan Tax Tribunal does not acquire jurisdiction over a residential property assessment appeal until a homeowner has first appealed her assessment to the Board of Review.[16]  In other words, a homeowner's failure to appeal at any step on the assessment appeals path by the prescribed deadlines—first to the Board of Assessors by February 15, next to the Board of Review by the second Monday in March—forfeits her ability to appeal her property tax assessment to the Michigan Tax Tribunal for that year.  Assuming she followed those earlier steps at

---

[12] Detroit Code of Ordinances § 44-4-3(b).

[13] *Id.* § 44-4-3(a).

[14] *Id.* §§ 44-4-3(a), 44-4-6(b).

[15] *Id.* § 44-4-6(c).

[16] M.C.L. § 205.735a(3).

the right time, a homeowner must file at the Michigan Tax Tribunal by July 31 of a given tax year to have her appeal heard.[17]

35.     As this review shows, the mandatory appeals structure formed by interlocking Michigan and Detroit law raises the stakes of the February 15 Board of Assessors appeal deadline.  A homeowner who does not appeal her property tax assessment to the Board of Assessors by February 15 in a given year cannot appeal her assessment at all.

36.     Michigan law requires that property tax assessment notices include a clear and plain statement of information relevant to the taxpayer.[18] Each notice must specify the parcel of property assessed, the tentative taxable value for the current year, the taxable value for the preceding year, and the percent change from the preceding year, among other related data points.[19]

37.     Each notice also informs homeowners of their right to appeal their tentative assessments and the consequences of failing to appeal at each step.  For

---

[17] *Id.* § 205.735a(6).

[18] *See id.* § 211.24c(1)-(2) (describing notice requirements under typical circumstances); *see also id.* § 211.10f(3) (describing nearly identical notice requirements if the State assumes jurisdiction of local assessments).

[19] *See* Ex. 1 (sample of City of Detroit, Notice of Assessment, Taxable Valuation, and Property Classification (2017)).  On information and belief, the operative language contained in this sample notice regarding appeal deadlines and requirements is identical to the language on the notices that Plaintiffs and members of the Detroit Homeowners Class actually received.

example, Detroit's 2017 notices stated that if the homeowner believed the assessed value of their home was incorrect, the homeowner "must appeal during the ASSESSORS REVIEW PERIOD."  The 2017 notices further stated, "Protest during the February Assessors Review Period is required to protect your right to appear before the March Board of Review.  Protest at the March Board of Review is necessary to protect your right to further appeal to the Michigan Tax Tribunal."[20] Notices sent in other years described these appeal restrictions using the same or similar language.

## II.    Detroit, on Michigan's Watch, Sent *All* Detroit Homeowners Untimely and Deficient Assessment Notices in 2017, Extinguishing Citizens' Appeal Rights

38.    The Detroit Defendants denied due process to ***every*** Detroit homeowner in 2017 by sending misleading assessment notices too late to allow virtually anyone to file an appeal.  The Michigan Defendants, who had assumed oversight of the

---

[20] Ex. 1.  Although the example notice attached to this Complaint purports to extend the review period to February 18, Detroit ordinance provides that the review period ends annually on February 15.  Detroit Code of Ordinances § 44-4-3(b).

Detroit Assessment Division in 2014,[21] also bear responsibility for these citywide due process violations.

39.    Following revelations of rampant and systemic over-assessments in Detroit, the City's government, with oversight from the Michigan Defendants, completed a long-overdue reappraisal of all residential property in 2017.  Every homeowner was to receive a brand-new assessment and a corresponding notice of their assessment and right to appeal.[22]

40.    The reappraisal caused a delay in preparing and sending the 2017 assessment notices.  It was not until February 14, 2017 that the Detroit Defendants mailed the bulk of residential notices—263,516 of them—to Detroit homeowners.

41.    Each notice prominently identified an "EXTENDED ASSESSORS REVIEW SCHEDULE," during which an individual must file an appeal to the Board of Assessors to preserve any right to appeal, as January 25, 2017 through

---

[21] On information and belief, the Michigan Defendants assumed jurisdiction of Detroit's Assessment Division under the authority of M.C.L. § 211.10f.  The STC officially oversaw the Detroit Assessment Division from 2014 until August 29, 2017.  *See* State Tax Comm'n, Approved Meeting Minutes at 5 (Aug. 29, 2017), https://www.michigan.gov/documents/treasury/08-29-17_STC_Minutes_-_Final_601098_7.pdf  (voting to "relinquish control over the reappraisal for the City of Detroit"); Christine Ferretti, *State Lifts Oversight of Detroit Property Assessments*, The Detroit News (Aug. 30, 2017), https://www.detroitnews.com/story/news/local/detroit-city/2017/08/30/state-lifts-oversight-detroit-property-assessments/105130886/.

[22] M.C.L. § 211.10f(3).

15

February 18, 2017.[23]  The plain language of each notice told homeowners that failure to appeal by February 18 that year would make any appeal at any level impossible.

42.   A series of factors—from misleading information contained on the notices themselves, to the late dates they were sent, to the blundering and confusing public communications mistakes that followed—all converged to render every 2017 residential assessment notice inadequate and to effectively deny any Detroit homeowner the ability to appeal in 2017.

43.   ***First***, the notices likely violated state law from the start.  When assessments are completed under state watch, Michigan law short-circuits the usual appeals process by allowing every property owner to appeal directly to the Michigan Tax Tribunal up to 30 days after receiving a notice of assessment.[24]  Naturally, every assessment notice must tell property owners of their right to direct appeal.[25]  But none of this information made it onto Detroit's 2017 assessment notices, even though every Detroit homeowner theoretically had an opportunity to appeal straight to the Michigan Tax Tribunal.  The notices instead told homeowners to follow the

---

[23] Ex. 1.

[24] M.C.L. § 211.10f(3).

[25] *Id*.

usual three-tier process, starting at the Board of Assessors, or else forfeit any right to appeal.[26]

44.  **Second**, the Detroit Defendants' mailing delay rendered all printed notices inadequate even under the usual Detroit appeals process.  Each 2017 property tax assessment notice stated that appeals to the Board of Assessors could be filed by February 18, 2017, instead of the usual February 15 deadline.[27]  This extension did Detroit homeowners little good, as almost all notices were mailed just four days before that deadline, to say nothing of when they actually arrived.  Furthermore, the process the City used to extend the Board of Assessors review period to February 18 may have been invalid, as local ordinance requires the period to end on February 15.[28]

45.  **Third**, after it realized all residential notices would be delivered late, the City of Detroit scrambled to announce remedial measures that were so poorly communicated that they deprived all Detroit homeowners of meaningful notice and an opportunity to appeal.  In the wake of the delayed mailing, the City haphazardly attempted to extend the Board of Assessors appeal deadline by ten additional days, to February 28, 2017.  Simultaneously, the City also purportedly attempted to waive

---

[26] *See* Ex. 1.

[27] *See id*.

[28] Detroit Code of Ordinances § 44-4-3(b).

Board of Assessors review altogether, allowing homeowners to appeal directly to the Board of Review.

46.    These last-minute accommodations were not communicated on the notices delivered to Detroit taxpayers.  There was no second mailing to homeowners, directly notifying them of the changes.  Instead, they were announced so feebly that few could be expected to hear of them.  Scattered news articles printed the information between February 13 and 18.[29]  On the evening of February 14, a representative of the Detroit Office of the Chief Financial Officer ("OCFO") made a two-minute announcement at a sparsely attended, public City Council meeting.[30]  The OCFO official discussed the well-known reappraisal and said, "I'm sure everyone is wondering, 'Ok, we've heard this for a while. Where are those assessment notices letting you know what your new values are?'"  She stated that valuation errors had been found, "so the Board of Assessors made a decision to delay

---

[29] *See, e.g.*, CBS Detroit, *10 More Days: Detroit Extends Deadline To Appeal Property Tax Assessments* (Feb. 18, 2017), https://detroit.cbslocal.com/2017/02/18/10-more-days-detroit-extends-deadline-to-appeal-property-tax-assessments/;  Tyler Scott, *Detroit Extends Deadline for Property Tax Assessment Appeals*, Michigan Radio NPR (Feb. 17, 2017), https://www.michiganradio.org/post/detroit-extends-deadline-property-tax-assessment-appeals; Joe Guillen, *Detroit Extends Time to Appeal Property Valuation*, Detroit Free Press (Feb. 13, 2017), https://www.freep.com/story/news/local/michigan/detroit/2017/02/13/detroit-extends-time-appeal-property-valuation/97850946/.

[30] Detroit City Council Evening Community Meeting, at 09:30 to 11:30 (Feb. 14, 2017), http://video.detroitmi.gov/CablecastPublicSite/show/4706?channel=1.

mailing of the notices until those errors could be verified and corrected." She went on, "The Assessors Review process will end this year February the 28th. Normally it ends on the 15th, but because the review took so long to verify the errors that were discovered, we decide– the decision was made to extend it."[31] The OCFO official answered no questions, nor did she say anything about an ability to skip the Board of Assessors and appeal straight to the Board of Review.

47.    Even if homeowners were lucky enough to attend that meeting or catch a whiff of these last-minute changes on the news, not many homeowners could be expected to believe them. That is because every single notice mailed individually to homeowners stated that the deadline to appeal *remained February 18, 2017*, and that an appeal to the Board of Assessors was "*required to protect your right to appear before the March Board of Review*."[32] One of the articles that reported on the ten-day extension even highlighted the fact that "[s]tatements mailed to residents still list the old deadline for appeal," and quoted a tax attorney as saying, "If the old deadline is on the assessment paper that is a big problem. . . . It's something that will cause people[,] no doubt, not to appeal."[33] The OCFO representative who spoke at the City Council meeting on February 14 said, "[Y]our assessment notice will be

---

[31] *Id.*

[32] *See* Ex. 1 (emphasis added).

[33] Scott, *Detroit Extends Deadline for Property Tax Assessment Appeals*.

coming in the mail.  You should have it by Saturday [February 18]."[34]  In other words, Detroiters could expect to have their assessments in hand by the appeal deadline printed on their notices.

48.     Moreover, the City's executive branch had questionable authority to take these actions.  The Detroit Code of Ordinances specifically states the dates of the Board of Assessors appeal period and requires a prior Board of Assessors appeal to gain access to the Board of Review.[35]  The Detroit City Council never amended this statutory framework for 2017 or any other recent year to either extend the Board of Assessors appeal period or to waive Assessors appeals altogether.[36]

49.     In sum, the Detroit Defendants' failure to timely notify homeowners of their property tax assessments in 2017 and accurately describe their appeal rights effectively stifled all Detroit homeowners' opportunity to appeal their new assessments and systematically denied them due process.  The Michigan Defendants share responsibility for these violations, because they officially oversaw the Detroit Office of the Assessor during the 2017 property tax season.

---

[34] Detroit City Council Evening Community Meeting, at 09:30 to 11:30.

[35] Detroit Code of Ordinances §§ 44-4-3(b), 44-4-6(b).

[36] *See* Charter of the City of Detroit § 4-114 (Jan. 1, 2012) (requiring that "those acts of the City shall be by ordinance which: 1. Amend or repeal any language in, or add any language to, the Detroit City Code").

### III.   Detroit's History of Rampant and Illegal Over-Assessment Compounds the Harm to Homeowners

50.    The right to appeal property tax assessments is especially important—and denial of that right especially harmful—in Detroit, where City government has plagued homeowners with rampant and unlawful over-assessments for at least a decade.

51.    Detroit's failure to respond to the 2008 financial crisis led to an explosion of over-assessed homes.  As one of the cities hit hardest by the crisis, Detroit saw the market value of homes fall precipitously between 2008 and 2013.  In that period, the City failed to reduce assessments to reflect this drop in market value.  Detroit widely and systematically over-assessed and overtaxed residential properties as a result.[37]

52.    City officials have long been aware of this problem.  In 2015, for instance, Defendant Detroit Mayor Michael Duggan publicly admitted, "For years homes across the city have been over assessed."[38]  The problem became so glaring that it caused the State of Michigan's takeover of Detroit's Assessment Division in

---

[37] Atuahene & Berry, *Taxed Out*, 9 U.C. Irvine L. Rev. at 853-54.

[38] Khalil AlHajal, *Detroit Property Tax Assessments to Decline as 62,000 Properties Face Foreclosure*, MLive (Jan. 28, 2015), https://www.mlive.com/news/detroit/2015/01/detroit_property_tax_assessmen.html.

2014, resulting in the citywide reappraisal of all residential property that was completed in 2017.

53.    A recent investigation by *The Detroit News*, using values calculated in the 2017 reappraisal, estimates that Detroit homeowners were overtaxed by at least $600 million between 2010 and 2017.  Of 63,000 households that were delinquent on property tax payments as of fall 2019, greater than 90 percent had been overtaxed between 2010 and 2016.[39]

54.    Not only were Detroit's high property taxes completely unmoored from the market value of residential properties; they also systematically violated Michigan law.  Article IX, section 3 of the Michigan Constitution requires that property tax assessments cannot exceed 50 percent of the property's true cash value, also known as fair market value.  One 2018 study based on a statistical sample of property transactions in Detroit between 2009 and 2015 found that in each of those years, the City of Detroit assessed a majority of its residential properties—between 53 and 83 percent—in violation of the Michigan Constitution.[40]

55.    To compound matters, Detroit's well-documented and unlawful over-assessments most harmed those least able to bear the burden of high property taxes.

---

[39] MacDonald & Betancourt, *Detroit Homeowners Overtaxed $600 Million*.

[40] Bernadette Atuahene & Timothy R. Hodge, *Stategraft*, 91 S. Cal. L. Rev. 263, 286 (2018).

The 2018 study of Detroit home values and assessments determined that the lowest-valued properties in 2009 were assessed nearly eighteen times more than the amount permitted by the Michigan Constitution, on average, between 2009 and 2015. Meanwhile, the highest-valued properties were assessed below the constitutional limit during that period.[41]

56.    The weight of over-assessments has also fallen particularly heavily on African-Americans, who have faced disproportionately high assessments in Detroit and other predominantly Black Wayne County municipalities, as compared to predominantly White municipalities.   A 2018 study compared the median assessment ratio for all cities and towns in Wayne County and found that residents were over-assessed in four of the five localities, including Detroit, where African-Americans constituted a majority or supermajority.   Meanwhile, residents were routinely over-assessed in only four of thirty-eight municipalities where Whites made up a majority or supermajority.   Of twenty-four municipalities where residents were routinely assessed at or under the Michigan constitutional threshold, every one of them was majority White.[42]

---

[41] *Id.* at 288.

[42] Bernadette Atuahene, *"Our Taxes Are Too Damn High": Institutional Racism, Property Tax Assessments, and the Fair Housing Act*, 112 Nw. L. Rev. 1501, 1548-49 (2018).

57.     These numbers translate to real losses for real Detroit homeowners. *The Detroit News* reported that one individual bought her home for $4,800 in a 2011 tax foreclosure auction, but was taxed $2,600 that year, as if her house was worth $57,000.   Another man was overtaxed by at least $5,300 from 2010 to 2017, surpassing the accumulated $4,200 in delinquent taxes he owed over that period.[43]

58.     A property tax assessment appeal has been and remains the only remedy for individuals who fell victim to Detroit's recent history of widespread over-assessment.   Yet Detroit has made matters worse by denying every single homeowner in 2017 the timely notice required by law to avail themselves of that process.

## IV.   Wayne County Is Unjustly Enriched by Detroit's Systemic Over-Assessments

59.     A foreclosure crisis has gripped Detroit over the last decade, driven in large part by unending waves of property tax foreclosures.  When Detroit households fall delinquent on their property taxes, Wayne County reimburses the City to cover the delinquency.  After three years of delinquency, the County assumes the right to foreclose on the property.   From 2011 to 2015, Wayne County foreclosed on

---

[43] MacDonald & Betancourt, *Detroit Homeowners Overtaxed $600 Million.*

approximately 100,000 Detroit properties with delinquent taxes.   The County

foreclosed on roughly 30 percent of Detroit homes in the same period.[44]

60.     When the County forecloses, it sells homes at auction and collects a

string of fines, fees, and interest from taxpayers in delinquency.  One study tallied

up all the costs to a person confronting delinquency and foreclosure:

> From the time property taxes become payable, [Wayne] County levies
> 0.5% interest on the amount due on the first day of each month.  If taxes
> remain unpaid as of September 1, the interest rate increases to 1.5% on
> the first day of every month.  On March 1 of the following year, the
> interest increases to 18% and is applied retroactively to the date when
> the property became delinquent.  In addition to interest payments, as
> the property moves towards foreclosure, the taxpayer will also owe a
> significant sum in fees, including an administration fee (4%), an annual
> fee for providing notice of delinquency ($1-5), per parcel fee ($15), title
> search fee ($175), forfeiture certificate filing fee ($9), redemption
> certificate recording fee ($9), mailing and publication fee ($40), and
> posting fee ($100).[45]

61.     The County makes millions of dollars in the process.  In fiscal year

2018-2019, for example, the County anticipated revenue of $10,387,400 from

charges, fees, and fines from the property tax forfeiture program.[46]

---

[44] Atuahene & Berry, *Taxed Out*, 9 U.C. Irvine L. Rev. at 848.

[45] *Id.* at 870-71 (citations omitted).

[46] Charter Cty. of Wayne, Mich. Budget, Adopted Budget 2018-19 and Projected 2019-20, at 22-5, Office of the Cty. Treasurer (Sep. 20, 2018) https://www.waynecounty.com/documents/mb/adopted_budget_fy_2018-19_and_projected_budget_fy_2019-20.pdf.

62.     Wayne County also plays an essential role in Detroit's property tax assessments themselves.   Through a process called equalization, the Michigan General Property Tax Act requires Wayne County to examine all property assessments within its jurisdiction and to ensure that all real property "has been equally and uniformly assessed at true cash value."[47]  Wayne County's Assessment & Equalization Division prepares an annual report on equalizing property assessments throughout each of its constituent municipalities.[48]  The Division states its mission is to "provide quality assistance to Wayne County communities in regard to the valuation, assessment and audit of property."[49]

63.     Because of its role in preparing and equalizing Detroit assessments, Wayne County is implicated in Detroit's rash of over-assessments that have systematically violated the Michigan Constitution's guarantee that only 50 percent of a home's market value may be taxed.

64.     Moreover, the over-assessments are directly linked to Detroit's property tax foreclosure crisis.  One study concluded, based on a statistical sample

---

[47] M.C.L. § 211.34(2).

[48] *See* Wayne Cty. Assessment & Equalization Division, County Equalization reports, https://www.waynecounty.com/departments/mb/equalization/county-equalization.aspx (last visited Feb. 2, 2020).

[49] Wayne Cty. Assessment & Equalization Division, *Our Mission*, https://www.waynecounty.com/departments/mb/assessment-equalization.aspx (last visited Feb. 2, 2020).

analysis, that 10 percent of all tax foreclosures were caused by assessments that breached Michigan constitutional limits. For the lowest-valued homes, a full quarter of property tax foreclosures would not have occurred but for Detroit's over-assessments.[50]

65.     In this way, Wayne County knowingly profits from Detroit homeowners' inability to appeal their property tax assessments. Wayne County's failure to help ensure that Detroit assessed homes within the bounds of Michigan law led to a significant number of property tax foreclosures, which in turn led to millions of dollars in revenue for the County in the form of auction sales, interest, fines, and fees. Appealing property tax assessments is the only way for an individual homeowner to reverse an unconstitutional over-assessment, and potentially halt the slide into delinquency and foreclosure. Based on the totality of the evidence described above, the mass denial of Detroit homeowners' appeal rights has caused a large and unjustified windfall to Wayne County.

## V.     Plaintiffs Are Detroit Homeowners Who the City Denied the Ability to Appeal in 2017

### a) Deborah Howard

66.     Plaintiff Deborah Howard, a native Detroiter, has lived for nearly 30 years in her one-story, two-bedroom home in the Osborn neighborhood.

---

[50] Atuahene & Berry, *Taxed Out*, 9 U.C. Irvine L. Rev. at 886.

67.     Ms. Howard's neighborhood has changed dramatically over the time she has lived there.  While Ms. Howard avoided the worst of the financial crisis, many of her neighbors fell prey to risky home financing.  When she moved in, most of her block was full of houses occupied by their owners.  Now many of those houses stand vacant or have been demolished.

68.     Ms. Howard is current on all property tax payments, including those from 2017.  However, because of an unlawfully inflated assessment that valued her home at more than 50 percent of its true cash value in violation of the Michigan Constitution, Ms. Howard overpaid her 2017 property taxes.

69.     Ms. Howard has appealed her property tax assessment before, including in 2015 and 2019.

70.     However, in 2017, the Detroit Defendants, as they did with every Detroit homeowner, sent Ms. Howard an assessment notice too late to appeal.  She therefore had no opportunity that year to contest taxes that went beyond the limits set by the Michigan Constitution.

**b) William and Billie Hickey**

71.     Plaintiffs William and Billie Hickey bought their home, a one-story frame house, in 2010 from a friend who lived in their neighborhood of Brightmoor, on Detroit's far west side.  Mr. Hickey has lived in Detroit since 1963.  He and his

wife, both now retired after careers in the health care industry and local nonprofits, have lived in the City together for more than 20 years.

72.    In 2017, the Detroit Defendants sent Mr. and Mrs. Hickey an untimely and deficient property tax assessment notice on their home.  They therefore had no opportunity to contest their assessment in an appeal that year.

### c)  Flossie Byrd

73.    Plaintiff Flossie Byrd purchased her three-bedroom home in the 7 Mile area in 1993. Ms. Byrd has lived in Detroit her entire life, previously working as a Patient Care Specialist at Ascension Health.

74.    In 2017, the City of Detroit assessed Ms. Byrd's home at more than 50 percent of its fair market value, in violation of the limit set by the Michigan Constitution.  Ms. Byrd was therefore charged more than she should have owed in property taxes.

75.    The Detroit Defendants sent Ms. Byrd an untimely and deficient property tax assessment notice in 2017.  Ms. Byrd thus had no opportunity to appeal taxes that went beyond the limits set by the Michigan Constitution.

76.    Ms. Byrd fell behind on property tax payments in 2017 and the following year.  According to data from Wayne County, Ms. Byrd currently owes more than $300 in property taxes, interest, and fees from 2017.  She owes nearly $1,400 in property taxes, interest, and fees from 2018.

77.    Wayne County considers Ms. Byrd delinquent on her property taxes as a result of these unpaid amounts.

**d) Jeffrey Stevenson**

78.    Jeffrey Stevenson and his wife purchased their two-bedroom, one-story home in 2008.  Mr. Stevenson was born and raised in Detroit and is now on disability retirement after serving for 15 years as a plant worker for Ford Motor Company.

79.    In 2017, the City of Detroit assessed Mr. Stevenson's home at more than 50 percent of its fair market value, in violation of the limit set by the Michigan Constitution.  Mr. Stevenson and his wife were therefore charged more than they should have owed in property taxes.

80.    The Detroit Defendants sent Mr. Stevenson an untimely and deficient property tax assessment notice in 2017.  Mr. Stevenson thus had no opportunity to appeal taxes that went beyond the limits set by the Michigan Constitution.

81.    Mr. Stevenson fell behind on property tax payments in 2017 and the following year.  According to data from Wayne County, Mr. Stevenson right now owes more than $500 in property taxes, interest, and fees from 2017.  He owes more than $1,900 in property taxes, interest, and fees from 2018.

82.    The County considers Mr. Stevenson delinquent on his property taxes as a result of these unpaid amounts.

30

83.     In addition, the unpaid taxes from 2017 render Mr. Stevenson's home subject to foreclosure if he does not pay all amounts due for that year in the coming months.

## CLASS ACTION ALLEGATIONS

84.     Plaintiffs bring this action as a class, pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of a proposed class consisting of homeowners in the City of Detroit who received untimely or otherwise inadequate notice of their property tax assessments in 2017 (the "Detroit Homeowner's Class"). The Detroit Homeowners Class is limited to properties where the homeowner actually resided in 2017.

85.     Within the Detroit Homeowner's Class are three subclasses:

a.      Overpaying Subclass: Plaintiffs Deborah Howard and Jeffrey Stevenson are Detroit homeowners whose appeal rights were thwarted by improper notice and who are currently or were unlawfully over-assessed in 2017 by the City of Detroit, resulting in overpayment of property taxes.  They bring this action individually and on behalf of all similarly situated homeowners.

b.      Delinquent Subclass: Plaintiffs Flossie Byrd and Jeffrey Stevenson are Detroit homeowners who were over-assessed and sent deficient and untimely notice by the Detroit Defendants in 2017.

31

Ms. Byrd and Mr. Stevenson are considered delinquent on their property taxes for 2017, resulting in accumulation of delinquency fines and fees. They bring this action individually and on behalf of all similarly situated homeowners.

c.     Foreclosure Subclass: Plaintiff Jeffrey Stevenson is a Detroit homeowner who was given improper notice and over-assessed by the Detroit Defendants, is delinquent on his property taxes for 2017 and, as a result, is subject to foreclosure by Wayne County. He brings this action individually and on behalf of all similarly situated homeowners.

86.    The Detroit Homeowners Class and constituent Subclasses are so numerous that joinder of all class members is impracticable. In 2017 alone, every Detroit homeowner—who collectively own more than 260,000 residential properties—received inadequate, misleading notice of their annual property tax assessment that effectively made any appeal impossible. Every homeowner who received deficient notice has suffered a denial of constitutional due process.

87.    Plaintiffs' claims are typical of the claims of each member of each Class or Subclass, in that the claims seek injunctive and/or monetary relief for violations of constitutional rights arising out of the same course of misconduct—namely, the Detroit Defendants' systemic failure to send timely and adequate notice of tax assessments in 2017. Plaintiffs are members of the Class or Subclass they seek to

32

represent, and Plaintiffs were injured by the same wrongful conduct that injured other members within the Class or Subclasses.

88.    The Defendants' misconduct, namely their deprivation of Detroit homeowners' right to adequate notice and an opportunity to appeal 2017 property tax assessments, has injured all members within each Class.

89.    There are multiple questions of law and fact common to the entire Detroit Homeowners Class or constituent Subclasses, including:

> a.    Whether Defendants sent inadequate and untimely property tax assessment notices *en masse* in 2017;

> b.    Whether Defendants' inadequate and untimely assessments violated class members' right to due process under the United States and Michigan Constitutions by providing deficient notice and denying them the ability to appeal their property tax assessment in 2017; and

> c.    Whether Wayne County has been and continues to be unjustly enriched by retaining fees and proceeds of tax delinquencies and foreclosures on properties whose owners were denied the ability to appeal their tax assessments.

90.    Plaintiffs and their chosen counsel will adequately represent the interests of the Class and Subclasses.

91.     Plaintiffs have selected counsel who are experienced with class-action

or large-scale litigation in federal court.

92.     Class litigation is superior to individually litigating the claims of each

member of each class.

## CAUSES OF ACTION

### COUNT I
### DENIAL OF DUE PROCESS UNDER
### THE UNITED STATES CONSTITUTION
### Against the Detroit Defendants and the Michigan Defendants
### (U.S. Const. am. XIV; 42 U.S.C. § 1983)

93.     Plaintiffs reallege and incorporate by reference the preceding

paragraphs of this Complaint as though set out here word for word.

94.     The United States Constitution prohibits the government from

depriving individuals of property interests without due process of law, including

notice and an opportunity to be heard.  U.S. const., Am. XIV.

95.     42 U.S.C. § 1983 allows individuals to bring actions against state actors

and municipal entities for deprivations of federal constitutional and statutory rights.

96.     The Detroit Defendants, acting under color of law, mailed property tax

assessment notices to all Detroit homeowners without sufficient time to appeal in

2017.  Defendants' failure to provide Plaintiffs with proper notice of their property

tax assessments or an opportunity to appeal their property tax assessments violated

Plaintiffs' right to due process under the United States Constitution.  U.S. const., Am. XIV.

97.    The Detroit Defendants' untimely, defective property tax assessment notices constitute an established official policy, practice, or custom that violated Plaintiffs' right to due process.  In 2017, the Detroit Defendants, including the City of Detroit and the Detroit Offices of the Chief Financial Officer and Assessor, acting through their authorized decisionmakers, Defendants Mayor Duggan and Assessor Hohrn, knowingly violated Plaintiffs' due process rights by mailing more than 250,000 deficient and untimely property tax assessment notices just four days before the appeal deadline printed on the notices, making an appeal virtually impossible. While 2017 provides a particularly egregious example, data obtained from a Freedom of Information Act (FOIA) request confirms that between 2012 and 2018, the City routinely sent most or all residential assessment notices approximately just two weeks before the deadline to appeal.  These notices regularly deprived Detroit homeowners adequate time to appeal their assessments.  Each untimely and deficient notice deprived homeowners of access to the assessment appeals process by failing to timely apprise them of their assessments.

98.    The Michigan Defendants, who had official oversight of the City of Detroit's Assessment Division in 2017, were legally responsible for ensuring that accurate notices were sent to all homeowners that also contained information about

how a homeowner could appeal an assessment.  Given their failure to ensure Detroit

homeowners received timely and accurate assessment notices, the Michigan

Defendants share responsibility for the denial of due process to Detroit homeowners.

## COUNT II
## DENIAL OF DUE PROCESS UNDER THE MICHIGAN CONSTITUTION
### Against the Detroit Defendants and the Michigan Defendants
### (Mich. Const. 1963, art. 1, § 17)

99.    Plaintiffs reallege and incorporate by reference the preceding

paragraphs of this Complaint as though set out here word for word.

100.   The Michigan Constitution prohibits deprivation of property without

due process of law.  Mich. const. 1963 art. 1, § 17.

101.   The Detroit Defendants, acting under color of law, mailed property tax

assessment notices to all Detroit homeowners without sufficient time to appeal in

2017.  Defendants' failure to provide Plaintiffs with proper notice of their property

tax assessments or an opportunity to appeal their property tax assessments violated

Plaintiffs' right to due process under the Michigan Constitution.  Mich. Const. 1963,

art. 1, § 17.

102.   The Detroit Defendants' untimely, defective property tax assessment

notices constitute an established official policy, practice, or custom that violated

Plaintiffs' right to due process.  In 2017, the Detroit Defendants, including the City

of Detroit and the Detroit Offices of the Chief Financial Officer and Assessor, acting

through their authorized decisionmakers, Defendants Mayor Duggan and Assessor

36

Hohrn, knowingly violated Plaintiffs' due process rights by mailing more than 250,000 deficient and untimely property tax assessment notices just four days before the appeal deadline printed on the notices, making an appeal virtually impossible. While 2017 provides a particularly egregious example, data obtained from a Freedom of Information Act (FOIA) request confirms that between 2012 and 2018, the City routinely sent most or all residential assessment notices approximately just two weeks before the deadline to appeal.  These notices regularly deprived Detroit homeowners adequate time to appeal their assessments.  Each untimely and deficient notice deprived homeowners of access to the assessment appeals process by failing to timely apprise them of their assessments.

103.   The Michigan Defendants, who had official oversight of the City of Detroit's Assessment Division in 2017, were legally responsible for ensuring that accurate notices were sent to all homeowners that also contained information about how a homeowner could appeal an assessment.  Given their failure to ensure Detroit homeowners received timely and accurate assessment notices, the Michigan Defendants share responsibility for the denial of due process to Detroit homeowners.

**COUNT III**
**UNJUST ENRICHMENT**
**Against Wayne County**

104.   Plaintiffs reallege and incorporate by reference the preceding paragraphs of this Complaint as though set out here word for word.

105.   Wayne County has a legal duty under the Michigan General Property Tax Act to equalize property tax assessments throughout all of its constituent municipalities, including the City of Detroit.

106.   The Wayne County Assessment & Equalization Division also states its mission is to assist Wayne County communities with their assessment practices.

107.   Through its equalization and oversight role, Wayne County is responsible for monitoring and correcting property tax assessments in Detroit and other municipalities that systematically assess any class of property (*i.e.*, residential, commercial) in excess of limits set by the Michigan Constitution, art. IX, section 3.

108.   Over-assessments in Detroit are directly linked to property tax foreclosures.   One study estimates that in recent years, 10 percent of all tax foreclosures, and 25 percent of foreclosures among the lowest-valued homes, were caused by unconstitutionally high assessments.

109.   Wayne County makes millions of dollars annually from the auction sales, interest, fines, and fees associated with property tax foreclosure.

110.   Wayne County was, is, and will continue to be unjustly enriched by the collection of delinquency and foreclosure revenues, interest, fines, and fees because the County was complicit in systemic, illegal over-assessment that directly led to unjust delinquency fines and property tax foreclosures, which could have been prevented had homeowners not been denied their tax appeal rights.

38

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and each Class or Subclass,

pray for the following relief:

A.     A declaration that the Detroit Defendants and the Michigan Defendants

violated the due process rights of Plaintiffs and the Detroit Homeowners Class

under both the U.S. and Michigan Constitutions by mailing inadequate and

untimely property tax assessment notices that denied Plaintiffs and the Detroit

Homeowners Class both notice and an opportunity to appeal their property tax

assessments;

B.     An injunction requiring the Detroit Defendants and (to the extent they

assume responsibility for assessments again in the future) the Michigan

Defendants to guarantee timely service of property tax assessment notices in

all future years;

C.     An injunction requiring the Detroit Defendants to allow members of the

Detroit Homeowners Class an opportunity to appeal their 2017 property taxes

retroactively;

D.     An injunction requiring, in the event that future assessment notice

mailings are delayed, that the Detroit Defendants and (to the extent they

assume responsibility for assessments again in the future) the Michigan

Defendants must automatically extend appeal deadlines by 30 days after the

date of mailing, with clear, individualized notice of the extension given to each residential property owner;

E.      A judgment requiring the Detroit Defendants and Wayne County to pay damages to the Detroit Homeowners Class and/or individual Subclasses in an amount to be determined at trial;

F.      A declaration that Wayne County was unjustly enriched by property tax foreclosure sales and associated interest, fines, and fees because it failed to ensure that Detroit did not unlawfully assess property values in violation of the Michigan Constitution, a practice that—combined with the due-process violations described above—led directly to property tax foreclosures;

G.      An injunction requiring Wayne County to stop seeking foreclosure and stop foreclosure proceedings against homeowners in the Foreclosure Subclass; and

H.      Awarding all such other and further relief as the Court deems just and proper.

                              Respectfully submitted,

Dated: February 13, 2020

                              By: /s/ Rami N. Fakhouri
                              Rami N. Fakhouri
                              Betsy Farrington
                              Samuel E. Schoenburg (*Admission pending*)
                              GOLDMAN ISMAIL TOMASELLI
                              BRENNAN & BAUM LLP
                              200 South Wacker Drive, 22nd Floor

Chicago, IL 60606
Tel: (312) 881-6000
rfakhouri@goldmanismail.com
bfarrington@goldmanismail.com
sschoenburg@goldmanismail.com

Cynthia Heenan (P53664)
Constitutional Litigation Associates, P.C.
220 Bagley, Ste. 740
Detroit, MI 48226
Tel: (313) 961-2255
Heenan@ConLitPC.com

*Attorneys for Plaintiffs*