UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Flossie Byrd, et al,

      Plaintiffs,                Case No. 20-10382

v.                              Hon. Nancy G. Edmunds

The City of Detroit, et al,

      Defendants.

| | |
|---|---|
| Cynthia Heenan | James D. Noseda |
| Constitutional Litigation Assocs, P.C. | Charles N. Raimi |
| 220 Bagley, Suite 740 | City of Detroit Law Department |
| Detroit, MI 48226 | Attorney for City of Detroit |
| (313) 961-2255 | defendants |
| P53664 | Two Woodward Avenue |
| Heenan@ConLitPC.com | Detroit, MI 48226 |
| | (313) 237-3057 / 5037 |
| Rami N. Fakhouri | P52563 |
| Betsy Farrington | P29746 |
| Samuel E. Schoenburg | nosej@detroitmi.gov |
| Goldman Ismail Tomaselli | raimic@detroitmi.gov |
| Brennan & Baum LLP | |
| 200 South Wacker Drive, 22nd Floor | Blair Daniels |
| Chicago, IL 60606 | Assistant Corporation Counsel |
| (312) 881-6000 | Attorney for Wayne County |
| rfakouri@goldmanismail.com | 400 Monroe, Suite 660 |
| bfarrington@goldmanismail.com | Detroit, MI 48226 |
| sschoenburg@goldmanismail.com | (313) 967-2203 |
| | P81030 |
| | bdaniels@waynecounty.com |

## City Of Detroit Defendants' Motion Dismiss Under Federal Rule Of Civil Procedure 12(b)(1) For Lack Of Jurisdiction

Defendants, the City of Detroit, Office of the Chief Financial Officer of the City of Detroit, Office of the Assessor of the City of Detroit, Michael Duggan in his official capacity as Mayor of the City of Detroit, and Alvin Horhn in his official capacity as City of Detroit Assessor (collectively hereinafter "the City") move to dismiss plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) for the reasons set forth in the attached brief.

As to the City, plaintiffs allege that they were denied due process by means of the delayed or late mailing of tax assessment notices in 2017. Plaintiffs contend that the late mailing denied them the ability to appeal their tax assessments to the Board of Assessors ("the BOA") within the time frame proscribed by City ordinance, and therefore, they could not appeal their assessments to the March Board of Review ("the MBOR"), or thereafter, appeal to the Michigan Tax Tribunal ("the MTT").

Plaintiffs' contentions are incorrect both in fact and in law. In light of the delayed mailing of some assessment notices in 2017, the City extended by two weeks the time for all taxpayers to appeal to the

ii

BOA, and also allowed appeals to the MBOR without having to first appeal to the Assessors. These actions provided a plain, speedy and efficient means to appeal tax assessments. More importantly, for any taxpayer that did not take advantage of the City's time extension and waiver, a taxpayer somehow still denied due process by delayed mailing had the right seek de novo review by filing an appeal to the MTT because Michigan law requires the MTT to hear an appeal of a tax assessment where due process was denied by the procedures followed by a local assessor. See, *Spranger v City of Warren*, 308 Mich. App. 477, 483 (2014) (reversing dismissal of appeal and ordering MTT to allow full appeal of denial of tax exemption because MTT could cure the denial of procedural due process by the local taxing authority); *Wise v City of Holland*, 2016 WL 2772163, unpublished per curiam opinion, Court of Appeals No. 327450 at *3-4 (May 12, 2016) (applying *Spranger*, *supra* and other case law, and upholding MTT decision based upon its de novo review of appeal from local Board of Review that had denied due process to petitioner).

Moreover, no plaintiff even alleges that they even sought to appeal their 2017 assessment before the BOA, MBOR, or Tax tribunal, but

iii

could not because of the delayed mailing. This is not surprising because each plaintiff's tax assessment dropped every year from 2014 through 2017. This case is but a poorly disguised stalking horse for the claim, barred by law, that in some years prior to 2017, the City had over assessed some property.

Because plaintiffs had the opportunity to appeal their 2017 proposed tax assessments to the BOA, the BOR, and the MTT, their due process claim, and all claims derivative of the alleged denial of due process, are barred from being heard in federal court by the Tax Injunction Act 28 U.S.C. § 1341, and by federal comity principles.

Plaintiffs' also seeks damages for an alleged denial of due process under the Michigan Constitution. That claim is barred by governmental immunity and by the exclusive jurisdiction of the Michigan Tax Tribunal over tax assessment appeals.

iv

In accordance with Local Rule 7.1(a), the undersigned counsel

sought but could not obtain concurrence in the relief sought.

Respectfully submitted,


By: /s/ James D. Noseda
James D. Noseda
Charles N. Raimi
City of Detroit Law Department
Attorneys for City of Detroit defendants
Two Woodward Avenue
Detroit, Michigan 48226
(313) 237-3057 / 5037
nosej@detroitmi.gov
raimic@detroitmi.gov
P52563
P29746

v

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Flossie Byrd, et al,

     Plaintiffs,                      Case No. 20-10382
                                        Hon. Nancy G. Edmunds

The City of Detroit, et al,

     Defendants.

---

| | |
|---|---|
| Cynthia Heenan | James D. Noseda |
| Constitutional Litigation Assocs, P.C. | Charles N. Raimi |
| 220 Bagley, Suite 740 | City of Detroit Law Department |
| Detroit, MI 48226 | Attorney for City of Detroit |
| (313) 961-2255 | defendants |
| P53664 | Two Woodward Avenue |
| Heenan@ConLitPC.com | Detroit, MI 48226 |
| | (313) 237-3057 / 5937 |
| Rami N. Fakhouri | P52563 |
| Betsy Farrington | P29746 |
| Samuel E. Schoenburg | nosej@detroitmi.gov |
| Goldman Ismail Tomaselli | raimic@detroitmi.gov |
| Brennan & Baum LLP | |
| 200 South Wacker Drive, 22nd Floor | Blair Daniels |
| Chicago, IL 60606 | Assistant Corporation Counsel |
| (312) 881-6000 | Attorney for Wayne County |
| rfakouri@goldmanismail.com | 400 Monroe, Suite 660 |
| bfarrington@goldmanismail.com | Detroit, MI 48226 |
| sschoenburg@goldmanismail.com | (313) 967-2203 |
| | P81030 |
| | bdaniels@waynecounty.com |

Brief In Support Of City Of City of Detroit Defendants' Motion To
Dismiss Plaintiffs' Complaint Under Federal Rule Of Civil Procedure
12(b)(1) For Lack Of Jurisdiction

# Table of Contents

City Of Detroit Defendants' Motion Dismiss Under Federal Rule Of Civil Procedure 12(b)(1) For Lack Of Jurisdiction ...................................ii

    Brief In Support Of City Of City of Detroit Defendants' Motion To Dismiss Plaintiffs' Complaint Under Federal Rule Of Civil Procedure 12(b)(1) For Lack Of Jurisdiction ..........................................................vii

Statement of Issues Presented...................................................................ix

Controlling or Most Appropriate Authority..............................................x

Facts ...........................................................................................................1

    A.   Plaintiff Flossie Byrd – Taxpayer Data .......................................1

    B.   Plaintiff Jeffrey Stevenson – Taxpayer Data .............................2

    C.   Plaintiff William and Billie Hickey – Taxpayer Data ...............3

    D.   Plaintiff Deborah Howard – Taxpayer Data................................4

    E.   The Annual Real Property Tax Assessment Review Process.....5

    F.   The 2017 Proposed Tax Assessment Notices..............................8

Standard of Review ...................................................................................10

Summary of Argument..............................................................................11

    I.     Plaintiffs' Federal Law Claims Claiming A Denial Of Procedural Due Process In the Assessment For Tax Purposes Of Real Property Are Barred By The Tax Injunction Act And Comity...........................14

    II.   The City Afforded A Plain, Speedy And Efficient Remedy For the Delay In Mailing Tax Assessment Notices .........................................17

    III.   The Michigan Tax Tribunal Affords A Plain, Speedy And Efficient De Novo Review Of Tax Assessment Where Due Process Was Denied By A Local Taxing Jurisdiction .....................................18

    IV.   Plaintiffs' Due Process Claim Under the Michigan Constitution Seeking Money Damages Is Barred By Governmental Immunity.....24

    V.   The Offices of the Chief Financial Officer and Assessor Cannot be Sued For Money Damages.................................................................24

Conclusion ...............................................................................................25

## STATEMENT OF ISSUES PRESENTED

A. Are Plaintiffs' Claims Alleging A Denial Of Due Process In Real Property Tax Assessment Barred By The Tax Injunction Act And Comity Where Michigan Law Provides A Just, Plain and Speedy Remedy?

B. Are Plaintiffs' Claims Against The City Defendants Otherwise Barred By Statutory Immunity And The Exclusive Jurisdiction of the Michigan Tax Tribunal?

The City Defendants answer yes to all of the above.

ix

# CONTROLLING OR MOST APPROPRIATE AUTHORITY

Page(s)

Cases

*Aluminum Co. of America v. State of Michigan, Department of Treasury,*
    522 F.2d 1120 (6th Cir.1975) .............................................................. 16

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ............................................................................ 11

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ............................................................................ 11

*Chippewa Trading Co. v. Cox,*
    365 F.3d 538 (6th Cir.) ....................................................................... 15

*Elba Twp v. Gratiot Co Drain Com'r,*
    493 Mich. 265; 831 NW2d 204 (2013) ............................................... 22

*Fair Assessment in Real Estate Ass'n v. McNary,*
    454 U.S. 100 (1981) ............................................................................ 15

*Genesee Co Drain Comm'r v Genesee Co,*
    309 Mich. App. 317 (2015) ................................................................. 24

*Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.,*
    491 F.3d 320 (6th Cir. 2007) ............................................................... 9

*Great Lakes Dredge & Dock Co. v. Huffman,*
    319 U.S. 293 (1943) ............................................................................ 14

*Haverstick Enterprises, Inc. v Financial Federal Credit, Inc.,*
    32 F.3d 989 (6th Cir. 1994) ............................................................... 25

*Helmsley v. City of Detroit,*
    320 F.2d 476 (6th Cir.1963) ............................................................... 15

*Kistner v. Milliken,*
    432 F. Supp. 1001 (E.D.Mich.1977) ................................................... 16

*Odom v Wayne Co,*
    482 Mich. 459; 760 N.W.2d 217 (2008) ............................................ 24

*Ohio Hosp. Ass'n v. Shalala,*
    978 F. Supp. 735 (N.D. Ohio 1997) ................................................... 11

x

*Palmer v Western Mich. Univ.*,
  224 Mich. App. 139 (1997) ........................................................ 23
*RMI Titanium Co. v. Westinghouse Elec. Corp.*,
  78 F.3d 1125 (6th Cir. 1996) ...................................................... 10
*Spranger v City of Warren*,
  308 Mich. App. 477 (2014) .................................................... 12, 19
*Thiokol Corp. v. Dep't of Treasury, State of Mich.*,
  987 F.2d 376 (6th Cir.1993) ...................................................... 14
*Wise v City of Holland*,
  2016 WL 2772163, unpublished per curiam ...................................... 12

Statutes

28 U.S.C. § 1341 ...................................................................... 11
MCL 24.271 ........................................................................... 18
MCL 24.272(3), (4) ................................................................... 18
MCL 24.275 ........................................................................... 19
MCL 205.701 .......................................................................... 16
MCL 205.72 ........................................................................... 18
MCL 205.731(a) ....................................................................... 16
MCL 205.731(b) ....................................................................... 18
MCL 205.735(1) ....................................................................... 16
MCL 205.735a(2) ...................................................................... 20
MCL 205.746(1) ....................................................................... 19
MCL 205.753 .......................................................................... 18
MCL 211.1 ............................................................................ 13
MCL 211.24 ............................................................................ 5
MCL 211.24c ........................................................................... 5
MCL 211.30 ........................................................................... 22
MCL 211.7u ........................................................................... 21
MCL 691.1401(b) ...................................................................... 23

Rules

Federal Rule Of Civil Procedure 12(b)(1) ........................................... ii
Federal Rule of Civil Procedure 12(b)(6) ........................................... 11

# FACTS

Each of the four plaintiffs claim that they were denied due process of law because the City mailed their proposed 2017 tax assessments notices too late to allow them time to appeal their assessments to the Board of Assessors ("BOA"), and, therefore, they could not appeal to the Board of Review ("BOR"), or thereafter to the Michigan Tax Tribunal ("MTT").

## A.    Plaintiff Flossie Byrd – Taxpayer Data

Flossie Mae Byrd owns a 960 square foot single family home in Detroit at 19311 Spencer. According to the City's tax records, she purchased the home in 1983 for which she claims a principal residence exemption ("PRE") for tax purposes. (Exhibit A.)[1] The taxable and the assessed values of the property from 2014 to the present are as follows:

|      | Taxable Value | Assessed Value |
|------|---------------|----------------|
| 2014 | $16,622       | $16,622        |
| 2015 | $14,800       | $14,800        |
| 2016 | $12,600       | $12,600        |
| 2017 | $10,000       | $10,000        |
| 2018 | $10,210       | $10,700        |
| 2019 | $10,455       | $11,700 (tax   |
| 2020 | $10,653       | $14,600 (reduced to $12,000) |

---

[1] The taxpayer prior to 2019 was Miodrag Matic, who did not claim a PRE. Ms. Byrd became the taxpayer by 2019 and claimed the PRE. The property has a tax delinquency for 2018 and 2018.

1

Ms. Byrd appealed her 2020 proposed assessment to the BOA. The Assessors reduced the assessed value to $12,000. She did not appeal that decision to the BOR. There was no change in the taxable value. Ms. Bryd did not appeal her proposed tax assessment in any other year listed above. Realtor.com reports that the average sales price for homes in her neighborhood is $30,000.

### B.    Plaintiff Jeffrey Stevenson – Taxpayer Data

Jeffrey A. Stevenson owns a 1,170 square foot single family home in Detroit at 11790 Nashville. According to the City's tax records, he purchased the home in 2014, he has not claimed a principal residence exemption for tax purposes, and has a tax delinquency from 2017. (Exhibit B.)[2] The taxable and the assessed values of the property from 2014 to the present are as follows:

|      | Taxable Value | Assessed Value |
| --- | --- | --- |
| 2014 | $22,576 | $22,576 |
| 2015 | $18,100 | $18,100 |
| 2016 | $15,400 | $15,400 |
| 2017 | $14,500 | $14,500 |

---

[2]  If this property is his principal residence, Mr. Stevenson should have claimed a homestead exemption. He then might have qualified for a poverty tax exemption under the City' robust and generous program. The same is true for Ms. Byrd. The City helps taxpayers who seek help.

2

| 2018 | $14,200 | $14,200 |
| 2019 | $14,540 | $15,800 |
| 2020 | $14,816 | $18,900 (reduced to $15,800) |

Mr. Stevenson appealed his 2020 proposed assessment to the BOA. The assessed value was reduced to $15,800. There was no change in the taxable value. He did not appeal his proposed assessment in any other year listed above. Trulia.com reports that the average sales price of homes in his zip code is $35,000.

### C.    Plaintiff William and Billie Hickey – Taxpayer Data

William and Billie Hickey own a 720 square foot single family home in Detroit at 14910 Lamphere. According to the City's tax records, they purchased the home in 2010 for which they claim a principal residence exemption for tax purposes. (Exhibit C.) The taxable and the assessed values of the property from 2014 to the present are as follows:

|  | Taxable Value | Assessed Value |
| --- | --- | --- |
| 2014 | $12,013 | $12,013 |
| 2015 | $10,700 | $10,700 |
| 2016 | $9,100 | $9,100 |
| 2017 | $7,500 | $7,500 |
| 2018 | $7,400 | $7,400 |
| 2019 | $7,577 | $8,000 |
| 2020 | $7,720 | $9,400 |

The 2020 BOA review fixed an error on the tax roll. Otherwise, no tax appeal has been taken by the Hickey's in the years above. Realtor.com reports that the average sales price of homes in the Hickey's is $26,000.

### D.   Plaintiff Deborah Howard – Taxpayer Data

Deborah Howard owns a 927 square foot single family home in Detroit at 19147 Algonac. According to the City's tax records, she purchased the home in 1991 for which she claims a principal residence exemption for tax purposes. (Exhibit D.) The taxable and the assessed values of the property from 2014 to the present are as follows:

|      | Taxable Value | Assessed Value |
|------|---------------|----------------|
| 2014 | $11,808       | $11,808        |
| 2015 | $9,400        | $9,400         |
| 2016 | $8,000        | $8,000         |
| 2017 | $8,000        | $8,000         |
| 2018 | $8,168        | $8,200         |
| 2019 | $8,364        | $9,000         |
| 2020 | $8,522        | $9,600         |

Ms. Howard appealed her proposed assessment to the BOA in 2015, 2019, and 2020. Those appeals were denied. She did not seek BOR review in 2015 or 2019. She has appealed her 2020 assessment to the

BOR. RealtyTrak reports that the estimated present value of her home is $36,000.

Ms. Howard also owns four other houses on Algonac Street (at 19137, 16159, 19169 and 19180) and a fifth house at 19045 Waltham. (Exhibit D.) The complaint does not appear to place those investment properties at issue (see, ECF 1, PageID#28-29). Like her principal residence, the assessed and taxable value on those 5 parcels dropped every year from 2014 through 2017.

###### E.    The Annual Real Property Tax Assessment Review Process[3]

Under Michigan law, a local assessor must, on or before the first Monday in March, prepare an assessment roll for all taxable real property in the City. MCL 211.24. The assessed values are intended to reflect the property value as of the prior December 31, "tax day."  MCL 211.24c requires the assessor to give a notice by first class mail to each taxpayer for each assessed parcel that sets forth an increase in the tentative state equalized value for the year ("the Assessment Notice").

---

[3] The facts in this section E and the next section F are supported by the Declaration of Alvin Horhn (Exhibit E).

The Assessment Notice must be mailed not less than 14 days before the meeting of the board of review.

The Assessment Notice shall include the tentative taxable value for the current year and the prior year. The notice shall specify the time and pace of the meeting in March of the Board of Review ("the MBOR"). The assessment notice shall be addressed to the owner of record and mailed not less than 14 days before the meeting of the MBOR.

The City of Detroit's 2012 City Charter provides for a 3 member Board of Assessors. Sec. 6-304. The Charter provides that the City Council may sit as the Board of Review or appoint a nine member board (the current procedure).

By ordinance, the City has historically held both a Board of Assessors' review in February followed in by the March Board of Review, both of which review property tax assessments. The Assessors' review is believed to be unique among Michigan cities.

The Board of Assessors review occurs first. It is a process in which taxpayers can meet informally with City assessors or their representatives to explain why they believe their assessment is too high. Taxpayers may, but need not, present supporting documents. The

6

assessors have broad discretion to reduce taxpayers' assessments as a result of this review process. If a reduction is granted, and the taxpayer deems it satisfactory, the taxpayer need not appear before the Board of Review and, likewise, the Board of Review is relieved of the need to hear that taxpayer's appeal. The Board of Review process held in March is far more formal and taxpayer's are expected to produce documentation supporting their request for relief.

Annually, thousands of taxpayers have received tax reductions during the Board of Assessors review. This has been extremely beneficial to those taxpayers and also to the City of Detroit, because of the limited time and resources available for the March Board of Review.

The City of Detroit has over 380,000 separate parcels of real property, including 250,000 residential parcels. Particularly in years which entailed substantial appeal activities, it would be difficult or impossible for the March Board of Review to properly review appeals were it not for the prior Board of Assessors review.

City ordinance requires that a taxpayer protest at the Board of Assessors review is a prerequisite to appearing at the Board of Review. However, the March Board of Review has routinely waived that

7

requirement in cases, where, for example, a taxpayer states that she or he did not receive timely notice or was not aware of the date deadlines.

In 2017, the City was not able to mail the bulk of tax assessment notices until February 14. In response, the City extended the Assessors Board of Review from February 18 until March 7. Some 2,174 residential taxpayers appeared at the 2017 Assessors Board of Review. Many taxpayers received reductions or other requested changes and did not have to appear before the Board of Review.

Because the assessment notices were tardy in going out, the March Board of Review waived the requirement of appearance before the Board of Assessors. More than 1,000 taxpayers who did not protest at the Board of Assessors review, did protest at the Board of Review. Taxpayers who came to CAYMC, or called on the phone, were advised to appear for the Board of Review even if they had not been able to appear before the Board of Assessors Review.

**F.    The 2017 Proposed Tax Assessment Notices**

In 2017, unexpected circumstances caused a delay in mailing the bulk of Assessment Notices. Two hundred sixty three thousand, three hundred and sixteen (263,316) were mailed on February 14, 2017. The

8

2017 Assessment Notices (see 2017 notices in Exhibits A to D), inform

that the Assessors Review is January 25, 2017 through February 18,

2017, Monday to Friday, from 8:30 a.m. until 4:30 pm, and 9:00 a.m.

until 3:00 pm on all intervening Saturdays.

To accommodate the delay in mailing the 2017 Assessment

Notices, and provide the 14 days prior notice required by state law, the

City extended the Assessor's review dates by two weeks to include

February 20 through February 28, March 1, and March 7. In 2017,

there were 2,283 in-person appeals and 241 letter appeals processed

during the Board of Assessor review period. Of the 2,524 total Assessor

appeals over the extended six week appeal period, 2,174 were

residential. The City publicized the extended Assessor's review period

which was widely reported in the print and television media. (Exhibit F,

news excerpts). A second mailing to all taxpayers of the extended dates

would not have served to provide 14 days notice prior to the Assessors

review.

To further accommodate for the delay in mailing the 2017

Assessment Notices, the MBOR waived the requirement that

residential taxpayers first appeal to the BOA. In 2017, nearly 1,100

appeals to the MBOR were taken by persons who had not appealed to the Assessors. Those MBOR appeals resulted in a total Assessed Value reduction of $2,574,100, and a $1,260,335 reduction in taxable value.

## STANDARD OF REVIEW

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) challenges the Court's subject-matter jurisdiction. "Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction generally come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). A facial attack on subject matter jurisdiction goes to whether the plaintiff has properly alleged a basis for subject matter jurisdiction, and the trial court takes the allegations of the complaint as true. *See Ohio Nat'l Life Ins. Co.*, 922 F.2d at 325.

A factual attack is a challenge to the factual existence of subject matter jurisdiction. As the Sixth Circuit has explained:

> Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction – its very power to hear the case – there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to

10

> plaintiff's allegations, and the existence of disputed
> material facts will not preclude the trial court from
> evaluating for itself the merits of jurisdictional
> claims. Moreover the plaintiff will have the burden of
> proof that jurisdiction does in fact exist.

*RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134

(6th Cir. 1996) (citation omitted). "In reviewing such a motion, a

district court is to probe the facts and assess the validity of its own

jurisdiction. In doing so, the Court has a wide discretion to consider

affidavits and the documents outside the complaint, and may even

conduct a limited evidentiary hearing if necessary." *Ohio Hosp. Ass'n*

*v. Shalala*, 978 F. Supp. 735, 739 (N.D. Ohio 1997).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)

tests the legal sufficiency of a complaint. "To survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007)).

## SUMMARY OF ARGUMENT

The four named plaintiffs in this case allege that they were denied

procedural due process because the City delayed in mailing real

11

property tax assessment notices in 2017, which they claim deprived each of them of the right to contest their assessments.

The Tax Injunction Act, 28 U.S.C. § 1341 ("the TIA") bars this case from being heard in federal court because each plaintiff had a plain, speedy and efficient remedy under Michigan law to challenge their tax assessments. The plaintiffs could have appealed their proposed assessment to the ABOR under the extended time allowed in 2017. The plaintiffs also could have appealed to the MBOR which waived ABPOR review. Finally, the plaintiffs could have appealed to the Michigan Tax Tribunal which must hear appeals where due process was denied by a board of review. See *Spranger v City of Warren*, 308 Mich. App. 477, 483 (2014) (reversing dismissal of appeal and ordering MTT to allow full appeal of the denial of a tax exemption because MTT could cure the denial of procedural due process by the local board of review); *Wise v City of Holland*, 2016 WL 2772163, unpublished per curiam opinion, Court of Appeals No. 327450 at *3-4 (May 12, 2016) (applying *Spranger*, *supra* and other case law, and upholding MTT decision based upon its de novo review of appeal from a local board of review that had denied due process to petitioner).

The mailing date of the 2017 tax assessment notices did not deny any plaintiff the right to challenge their assessments. The City extended the time for appeal to the Assessors Board of Review through March 7, 2017 to accommodate the two week delay in the mailing of tax assessment notices, and the City waived the requirement that for review by the ABOR, allowing over 1,000 taxpayers who did not appeal to the ABOR to appeal directly to the March Board of Review. Finally, if any plaintiff was denied the right to appeal to the local assessor by the delayed mailing, they had the right to seek de novo review by July 30, 2017 with the Michigan Tax Tribunal which must allow an appeal a tax assessment where a taxpayer claims a denial due process by the local board of review.

The plaintiffs' claim that they were denied the right to appeal their 2017 assessment is belied by their own tax assessment history. None of the plaintiffs sought to appeal their 2016, 2017, or 2018 tax assessments. This is not surprising given that the assessed and taxable value of the property or properties they owned decreased every year from 2014 through 2017 (or later), and thereafter the taxable value only increased by the consumer price index. None of the plaintiffs allege that

13

they considered, sought or were denied the right to appeal their 2017

proposed assessments.

## I.   Plaintiffs' Federal Law Claims Claiming A Denial Of Procedural Due Process In the Assessment For Tax Purposes Of Real Property Are Barred By The Tax Injunction Act And Comity

Each plaintiff's claim in this case is based upon the City's

assessment of real property under Michigan's General Property Tax

Act, MCL 211.1 et seq. To the extent plaintiffs seek injunctive or

declaratory relief based upon their tax assessments, their suit is barred

by the Tax Injunction Act, 28 U.S.C. § 1341 ("the TIA"), which prohibits

the district courts from enjoining, suspending, or restraining the

assessment, levy, or collection of any tax under state law where a plain,

speedy, and efficient remedy may be had in the courts of this state.

The Tax Injunction Act provides:

> The district court shall not enjoin, suspend or restrain the assessment, levy or collection or any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such state.

The TIA implements important principles of comity, expressing

the federal government's "scrupulous regard for the rightful

independence of state governments." *Great Lakes Dredge & Dock Co. v.*

*Huffman,* 319 U.S. 293, 298 (1943). The TIA recognizes the importance

of protecting the states' periodic collection of tax revenues from disruptive litigation in federal courts, which the states are powerless to control. The exclusion of the federal courts from the area of state taxation is so far-reaching that it precludes federal courts from declaring state tax laws unconstitutional. *Thiokol Corp. v. Dep't of Treasury, State of Mich.,* 987 F.2d 376, 378 (6th Cir.1993).

Where, as in this case, damages are sought in state tax based dispute, the claim also is barred by the principle of comity under which a federal court should normally abstain from hearing an action challenging the assessment, levy, or collection of state tax as long as there is a "plain, adequate, and complete" remedy available to the plaintiff in the state courts. *Fair Assessment in Real Estate Ass'n v. McNary,* 454 U.S. 100, 116 (1981). While the principle of comity reflects some of the same concerns that support the Tax Injunction Act, it "stands on its own bottom, and extends to cases seeking monetary damages as well as injunctive or other equitable relief." *Chippewa Trading Co. v. Cox,* 365 F.3d 538, 541 (6th Cir.), cert. denied, 543 U.S. 988, 125 S. Ct. 500, 160 L.Ed.2d 372 (2004).

15

Under both the Tax Injunction Act and the doctrine of comity, the plaintiffs bear the burden of pleading and proving the inadequacy of state judicial remedies. The Sixth Circuit has examined and upheld the adequacy of the remedies available to a taxpayer under the laws of the State of Michigan, including vindication of constitutional rights in the state courts. *Chippewa Trading,* 365 F.3d at 542-43; *Helmsley v. City of Detroit,* 320 F.2d 476 (6th Cir.1963) (Declaratory Judgment Act challenge to Michigan property tax assessment under due process and equal protection principles barred, because Michigan courts provide an adequate remedy); *Kistner v. Milliken,* 432 F. Supp. 1001 (E.D.Mich.1977) (appeal of right to state court of appeals from Tax Tribunal is a plain and adequate remedy for purposes of Tax Injunction Act).[4] A plaintiff's failure to avail itself of state remedies does not mean

---

[4]     MCL 205.701 et seq.; (commonly referred to as the "Michigan Tax Tribunal Act") provides the vehicle for administrative and judicial review of challenges to tax assessments. MCL 205.731(a) gives the Tribunal: "exclusive and original jurisdiction" of appeals from any "final decision, finding, ruling, determination, or order of any agency relating to assessment, valuation, rates, special assessments (emphasis added), allocation or equalization, under property tax laws".

MCL 205.735(1) states: A proceeding before the tribunal shall be original and independent and shall be considered de novo. And further provides that: "(1) . . . an appeal from the tribunal's decision shall be by

that they are inadequate. *Aluminum Co. of America v. State of*

*Michigan, Department of Treasury,* 522 F.2d 1120 (6th Cir.1975).

## II.    The City Afforded A Plain, Speedy And Efficient Remedy For the Delay In Mailing Tax Assessment Notices

By extending the Board of Assessor review period by two

additional weeks, taxpayers were afforded notice at least 14 days before

the board of review, as required by Michigan law (MCL 211.24c).

Plaintiffs do not contend that the 14 day notice period denied due

process. At the BOA, each plaintiff could have challenged their

assessment, but none sought that review. By waiving the requirement

for review by the BOA as a requirement to protest to the MBOR, the

MBOR provided a plain, speedy and efficient remedy for any delay in

the assessment notice mailing. The MBOR afforded an appeal to over

1,000 taxpayers who did not seek appeal to the ABOR.

---

right to the Court of Appeals. . . . (2) Appeals from the final order or decision of the tribunal may be taken by filing an appeal in accordance with the general court rules within 20 days after the entry of the order or decision appealed from or within 20 days after denial of a motion for rehearing timely filed. (3) An order, ruling, or decision prior to final decision of the Tribunal is not reviewable unless leave to appeal is granted by the court of appeals.

In any event, plaintiffs also could have obtained the plain, speedy and efficient review by appealing to the MTT.

### III.   The Michigan Tax Tribunal Affords A Plain, Speedy And Efficient De Novo Review Of Tax Assessment Where Due Process Was Denied By A Local Taxing Jurisdiction

Michigan provides a comprehensive scheme for the administrative and judicial review of challenges to tax assessments and levies. By enactment of 1973 P.A. 186, effective July 1, 1974, a new Tax Tribunal was created. This quasi-judicial entity, which consists of five appointed experts, has jurisdiction of "all state tax adjudicatory proceedings." The Tribunal has "exclusive and original jurisdiction" of: (1) appeals from any final decision, ruling, determination, or order of any agency relating to assessment, valuation, rates, special assessments, allocation, or equalization, under property tax laws," MCL2 05.731(a); and (2) any direct "proceeding for refund or redetermination of a tax under the property tax laws," MCL 205.731(b). Proceedings before the Tribunal are considered de novo. MCL 205.735(1). Appeals from final orders and decisions by the Tribunal may be had as of right to the Michigan

18

court of appeals, MCL 205.753.

To ensure that a petitioner before the MTT is afforded due process, hearings in the Tax Tribunal are conducted in accordance with the provisions of Chapter 4 of the Administrative Procedures Act, MCL 24.271 *et seq.;* MCL 205.72. The parties must be given the opportunity to present evidence and arguments regarding issues of fact, cross-examine witnesses, and submit rebuttal evidence. MCL 24.272(3), (4). The rules of evidence must be followed as far as practicable, but the tribunal "may admit and give probative effect to evidence of a type commonly relied upon by reasonably prudent men in the conduct of their affairs." MCL 205.746(1); MCL 24.275. See *Georgetown Place Co-op. v. City of Taylor,* 226 Mich. App. 33, 51–52, 572 N.W.2d 232, 239–40 (1997).

In this case, any named plaintiff (or any taxpayer for that matter), who contends that despite the City's extension of time for BOA review, and waiver by the MBOR of the BOA review, that the City still had denied them due process, any such taxpayer still could have appealed their assessment to the MTT which would have been obliged to provide de novo review of their appeal of the 2017 assessment.

19

In 2014, the Michigan Court of Appeals held that where a taxpayer is denied due process by a board of review, the MTT must allow the taxpayer a de novo hearing with notice and a meaningful opportunity to be heard, thereby curing any denial of due process. *Spranger v City of Warren*, 308 Mich. App. 477, 483 (2014). Spranger reversed the dismissal of an appeal to the MTT and ordered MTT to allow a full appeal of the denial of tax exemption because MTT could cure the denial of procedural due process by the local taxing authority. Spranger had applied for a poverty tax exemption which was denied by the City of Warren for being incomplete. She appealed to the March Board of Review, but despite being present every day the board met, no one informed her that when hearing was scheduled. The Court of Appeals found that the board had violated state law and denied Spranger due process for failing to notify her of her hearing date and failing to afford her a meaningful opportunity to be heard. 308 Mich. App at 484.

At the MTT, the city objected to Spranger's attempt to provide the additional information that the city found lacking when it denied her exemption, on the ground it had not been considered by the board of

20

review. The MTT found that she had failed to provide the specific

documentation required, and, therefore her qualification for an

exemption could not be determined.

After observing that the MTT did not err in not considering

whether the city's procedures violated due process, the Court explained:

> Nevertheless, although the error in this case was
> committed by respondent and its board of review, the only
> available remedy is a remand for a new hearing before the
> Tax Tribunal. *Nicholson,* 191 Mich. App. at 239–243, 477
> N.W.2d 492. On consideration de novo, MCL
> 205.735a(2); *Nicholson,* 191 Mich. App. at 240–241, 477
> N.W.2d 492, the Tax Tribunal will be in a position to cure
> the earlier constitutional error by providing petitioner with
> the procedural due process that she was denied by
> respondent, see *Johnston v. Livonia,* 177 Mich. App. 200,
> 207–208, 441 N.W.2d 41 (1989); *Kostyu v. Dep't. of
> Treasury,* 170 Mich. App. 123, 130, 427 N.W.2d 566 (1988).
> The Tax Tribunal will also be in a position to allow
> petitioner to supplement her original application and
> present new evidence. See *Heindlmeyer v. Ottawa Co.
> Concealed Weapons Licensing Bd.,* 268 Mich. App. 202, 218,
> 707 N.W.2d 353 (2005).
>
> We reverse the decision of the board of review and
> vacate the judgment of the Tax Tribunal. We remand this
> matter to the Tax Tribunal for an independent consideration
> de novo of petitioner's request for a poverty exemption under
> MCL 211.7u for tax year 2012. MCL 205.735a(2); see
> also *Nicholson,* 191 Mich. App. at 240–241, 243, 477 N.W.2d
> 492. On remand, the Tax Tribunal shall provide petitioner
> with notice and a meaningful opportunity to be heard, allow
> petitioner to supplement her original application, and permit

petitioner to present evidence and testimony regarding her income, assets, and qualifications for the exemption.

308 Mich. App. At 484–85 (footnotes omitted).

*Spranger* applies equally to tax assessment appeals. In *Wise v. City of Holland*, No. 327450, 2016 WL 2772163 (Mich. Ct. App. May 12, 2016), the Court allowed a tax assessment challenge to proceed before the MTT where the local board of review had failed to hold a hearing on the date required by statute, thereby depriving the taxpayer of due process. *Wise* explained that MTT proceedings will cure a due process violation by a local assessor:

> However, even accepting that the MBOR violated MCL 211.30 and deprived petitioner of an opportunity to be heard before the MBOR, this error does not entitle petitioner to relief on appeal given the de novo review afforded to her by virtue of the MTT's consideration of her assessment. That is, as a general proposition, depending on the circumstances, the availability of a remedy for an error, such as subsequent review by another entity or an opportunity for rehearing, may satisfy due process. See, e.g., *Georgetown Place Co-op v. City of Taylor,* 226 Mich. App 33, 52; 572 NW2d 232 (1997). See also *Elba Twp v. Gratiot Co Drain Com'r,* 493 Mich. 265, 285–286; 831 NW2d 204 (2013). In the context of property tax assessments in particular, the March meetings held by the MBOR are not a taxpayer's last opportunity to challenge an assessment. Rather, taxpayers are also afforded an opportunity for review by the MTT. See MCL 205.735a(2). A proceeding before the MTT "is original and independent and

22

is considered de novo." MCL 205.735a(2). See also *President Inn Props, LLC v. Grand Rapids,* 291 Mich. App 625, 631; 806 NW2d 342 (2011). Further, hearings before the MTT are conducted in such a manner—allowing for the presentation of evidence and arguments—so as to ensure that a petitioner is afforded due process. *Georgetown Place Co-op,* 226 Mich. App at 52. By virtue of these de novo proceedings, the MTT can provide a petitioner with the procedural due process denied by the MBOR and the MTT is thus in a position to cure an earlier constitutional error by the MBOR. See *Spranger,* 308 Mich. App at 484–485. Consequently, in this case, we conclude that the de novo MTT proceedings afforded petitioner a meaningful opportunity to be heard by an impartial decisionmaker, and these proceedings were sufficient to guarantee due process and cure any error by the MBOR. See *id.; Georgetown Place Co-op,* 226 Mich. App at 52–53.

*Wise, supra*, at *4 (footnotes omitted).

As made clear in *Spranger* and *Wise*, if a board of review denies a taxpayer due process, the MTT must allow de novo review and afford the taxpayer and process and opportunity to be heard that they were denied. Insofar as any plaintiff here contends they were denied due process by the City's assessment appeal procedures in 2017, they had the right to appeal to the MTT. For that reason, jurisdiction in this Court of this lawsuit is barred by the TIA and comity.

23

IV.   **Plaintiffs' Due Process Claim Under the Michigan Constitution Seeking Money Damages Is Barred By Governmental Immunity**

The City is a governmental agency immune from tort liability while engaged in a "governmental function." *Palmer v Western Mich. Univ.*, 224 Mich. App. 139, 141 (1997). To decide whether an act is a 'governmental function,' courts look to the general activity involved rather than the specific conduct engaged in when the alleged injury occurred. *Genesee Co Drain Comm'r v Genesee Co*, 309 Mich. App. 317, 327 (2015). The GTLA defines "governmental function" as "an activity that is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law." MCL 691.1401(b). In this case, the City was engaged in real property taxation under statute and the Michigan Constitution – an undeniable governmental function. No statutory exception to the City's immunity is alleged as required by law. *Odom v Wayne Co*, 482 Mich. 459, 477; 760 N.W.2d 217 (2008).

V.   **The Offices of the Chief Financial Officer and Assessor Cannot be Sued For Money Damages**

Plaintiffs sue the Mayor and City Assessor only in their official capacity (ECF1 PageID#10), meaning that they have sued only the City. But plaintiffs also sue the Office of the Chief Financial Officer ("CFO") and Office of the Assessor (*id.*), claiming they are each a municipal

24

entity. The CFO and Assessor are City of Detroit executive branch officials in charge of City departments or divisions thereof. The offices of CFO and Assessor have no existence apart from the department of the City that they oversee. In that regard, they are no different than a department of a city cannot be sued for money damages. *Haverstick Enterprises, Inc. v Financial Federal Credit, Inc.*, 32 F.3d 989, 992 n. 1 (6th Cir. 1994).

## CONCLUSION

For the reasons set forth above, this Court should dismiss the federal law claims for lack of jurisdiction, and dismiss the state law claims for failure to state a claim not barred by statutory immunity or decline to exercise supplemental jurisdiction.

Respectfully submitted,

By: /s/ James D. Noseda
James D. Noseda P52563
Charles N. RaimiP28746
City of Detroit Law Department
Attorney for City of Detroit defendants
Two Woodward Avenue
Detroit, Michigan 48226
(313) 237-3057 / 5037
nosej@detroitmi.gov
raimic@detroitmi.gov

March 24, 2020

## Certificate of Service

I certify that on March 26, 2020, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system which will send notification of such filing to the parties.

/s/ James D. Noseda

26