## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**FLOSSIE BYRD, et al,**

               **Plaintiffs,**                            Case No. 2:20-cv-10382

**v.**

                                          Hon. Nancy G. Edmunds

**THE CITY OF DETROIT, et al**

               **Defendants.**

_____/

| | |
|---|---|
| **GOLDMAN ISMAIL TOMASELLI BRENNAN & BAUM LLP** | **JAMES W. HEATH** |
| Rami N. Fakhouri | **Wayne County Corporation Counsel** |
| Betsy Farrington | **James G. Berry (P36051)** |
| Samuel E. Schoenburg (*Admission Pending*) | **James M. Jernigan (P57035)** |
| **Attorneys for Plaintiffs** | **Assistant Corporation Counsel** |
| **200 South Wacker Drive, 22nd Floor** | **Attorneys for Defendant Wayne County** |
| **Chicago, IL 60606** | **400 Monroe, Suite 660** |
| **(312) 881-6000** | **Detroit, MI 48226** |
| rfakhouri@goldmanismail.com | **(313) 224-6052** |
| bfarrington@goldmanismail.com | jberry@waynecounty.com |
| sschoenburg@golmanismail.com | jjernigan@waynecounty.com |
| | |
| **CONSTITUTIONAL LITIGATION ASSOCIATES, P.C.** | **James D. Noseda (P52563)** |
| Cynthia Heenan (P53664) | **Charles N. Raimi (P29746)** |
| **Attorneys for Plaintiffs** | **City of Detroit Law Department** |
| **220 Bagley, Ste. 740** | **Attorneys for City of Detroit Defendants** |
| **Detroit, MI 48226** | **Two Woodward Ave.** |
| **(313) 961-1255** | **Detroit, MI 48226** |
| Heenan@ConLitPC.com | **(313) 237-3057** |
| | nosej@detroitmi.gov |
| | raimic@detroitmi.gov |

_____/

### DEFENDANT WAYNE COUNTY'S
### MOTION TO DISMISS

NOW COMES Defendant Wayne County, by and through its attorneys, JAMES W. HEATH, Wayne County Corporation Counsel and JAMES G. BERRY AND JAMES M. JERNIGAN, Assistant Corporation Counsel, and in moving to dismiss Plaintiffs' complaint under Federal Rule of Civil Procedure ("FRCP") 12(b)(1) and 12(b)(6), rely on the arguments set forth in the attached brief.

In accordance with Local Rule 7.1(a), the undersigned counsel sought but could not obtain concurrence in the relief sought.

Respectfully submitted,

JAMES W. HEATH
Wayne County Corporation Counsel

BY:   /s/ James Berry_____
**JAMES G. BERRY (P36051)**
**JAMES M. JERNIGAN (P57035)**
Attorneys for Defendant Wayne County

Dated: March 31, 2020

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**FLOSSIE BYRD, et al,**

                 **Plaintiffs,**              **Case No. 2:20-cv-10382**

**v.**

                                    **Hon. Nancy G. Edmunds**

**THE CITY OF DETROIT, et al**

                 **Defendants.**

_____/

| | |
|---|---|
| **GOLDMAN ISMAIL TOMASELLI BRENNAN & BAUM LLP**<br>Rami N. Fakhouri<br>Betsy Farrington<br>Samuel E. Schoenburg (*Admission Pending*)<br>Attorneys for Plaintiffs<br>200 South Wacker Drive, 22nd Floor<br>Chicago, IL 60606<br>(312) 881-6000<br>rfakhouri@goldmanismail.com<br>bfarrington@goldmanismail.com<br>sschoenburg@golmanismail.com | **JAMES W. HEATH**<br>Wayne County Corporation Counsel<br>James G. Berry (P36051)<br>James M. Jernigan (P57035)<br>Assistant Corporation Counsel<br>Attorneys for Defendant Wayne County<br>400 Monroe, Suite 660<br>Detroit, MI 48226<br>(313) 224-6052<br>jberry@waynecounty.com<br>jjernigan@waynecounty.com |
| **CONSTITUTIONAL LITIGATION ASSOCIATES, P.C.**<br>Cynthia Heenan (P53664)<br>Attorneys for Plaintiffs<br>220 Bagley, Ste. 740<br>Detroit, MI 48226<br>(313) 961-2255<br>Heenan@ConLitPC.com | **James D. Noseda (P52563)**<br>Charles N. Raimi (P29746)<br>City of Detroit Law Department<br>Attorneys for City of Detroit Defendants<br>Two Woodward Ave.<br>Detroit, MI 48226<br>(313) 237-3057<br>nosej@detroitmi.gov<br>raimic@detroitmi.gov |

_____/

## DEFENDANT WAYNE COUNTY'S BRIEF IN SUPPORT OF MOTION TO DISMISS

## TABLE OF CONTENTS

Page

INDEX OF AUTHORITIES.................................................................................... iii

INDEX OF EXHIBITS ....................................................................................... vi

STATEMENT OF ISSUES PRESENTED ............................................................ vii

CONTROLLING AUTHORITY ......................................................................... viii

STATEMENT OF FACTS ................................................................................... 3

ARGUMENT ...................................................................................................... 6

I.     STANDARD OF REVIEW. .......................................................................... 6

II.    THIS COURT LACKS SUBJECT MATTER JURISDICTION. ...................... 6

       A. Plaintiffs' Constitutional Claims and Unjust Enrichment Claim Are Barred By The Tax
          Injunction Act And Principles Of Comity. .......................................... 6

       B. Plaintiffs Have A Plain, Speedy And Efficient State Remedy To Address Their Claims
          Before the Michigan Tax Tribunal. .................................................... 11

       C. This Court Also Lacks Jurisdiction Because Plaintiffs' Unjust Enrichment Claim Is Not Ripe
          For Adjudication. ........................................................................... 12

III.   THIS COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION
       OVER PLAINTIFFS' STATE LAW CLAIMS. ............................................ 13

IV.    PLAINTIFFS HAVE FAILED TO STATE A CLAIM AGAINST WAYNE COUNTY FOR
       UNJUST ENRICHMENT. .......................................................................... 15

       A. Plaintiffs' Assertion That The County Is Obligated To 'Double Check' The City's
          Assessments Is Incorrect As A Matter Of Law. ................................... 15

       B. Plaintiffs' Common Law Count Of Unjust Enrichment Cannot Proceed As A Matter Of Law
          Because Such A Claim Has Been Displaced By State Law. .................... 18

C. Plaintiffs' Claim For Unjust Enrichment Must Fail Because Plaintiffs Have Failed To Plead That The County Has Been "Enriched". .............................................................. 19

V.      PLAINTIFFS ARE NOT ENTITLED TO DECLARATORY AND INJUNCTIVE RELIEF. ............................................................................................................ 21

A.  Plaintiffs' Request For Injunctive Relief Must Fail. ........................................... 22

B.  Plaintiffs' Request For Declaratory Relief Must Fail. ........................................ 24

VI.     PLAINTIFFS LACK STANDING TO ASSERT THE DUE PROCESS RIGHTS OF OTHER INJURED HOMEOWNERS. .................................................................. 24

# INDEX OF AUTHORITIES

Page

**Cases**

*In re DeLorean Motor Co.,* 755 F.2d 1223, 1228 (6th Cir. 1985) ...................................................22

*Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S. Ct. 1507 (1967) ..............................................13

*Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 81 L. Ed. 617, 57 S. Ct. 461 (1937) ..............24

*Allen v. Wright,* 468 U.S. 737, 104 S. Ct. 3315, 82 L. Ed. 2d 556 (1984) .......................................24

*Allen v. Wright, supra*, 104 S. Ct. at 3325 ....................................................................................25

*Barber v. SMH (US), Inc.,* 202 Mich App 366, 375; 509 NW2d 791 (1993)..................................20

*Bay Mills Indian Community v. State*, 626 N.W.2d 169, 175, 244 Mich. App. 739 (Mich. Ct. App. 2001)...............................................................................................................................................9

*Bigelow v. Michigan Dept of Nat'l Resources*, 970 F.2d 154 (6th Cir. 1992)....................................13

*Booker v. City of Detroit,* 251 Mich. App. 167, 171-72 (2002).......................................................10

*California v. Grace Brethen Church*, 457 U.S. 393, 411 (1982)..................................................vii, 7

*Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986).......................................................6

*Chippewa Trading Co. v. Cox*, 365 F.3d 538 (6th Cir. 2004) ......................................................8, 9

*City of Chicago v. Int Coll of Surgeons*, 522 U.S. 156, 172-72 (1997)............................................14

*City of Detroit v. Walker,* 445 Mich. 682, 520 N.W.2d 135, 142 (1994)..........................................8

*Community Treatment Centers v. City of Westland*, 970 F. Supp. 1197, 1209 (E.D. Mich. 1997)....13

*Digital Props, Inc v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997)..................................12

*Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 72-73, 57 L. Ed. 2d 595, 98 S. Ct. 2620 (1978).........................................................................................................25

*DXL, Inc. v. Kentucky,* 381 F.3d 511, 516 (6th Cir 2004).............................................................6

*Fair Assessment v. McNary*, 454 U.S. 100, 116 ........................................................................7, 9

*Fieger v. Commissioner of Insurance*, 174 Mich App 467, 471; 37 NW2d 271 (1988)...................26

*Forest Hills Co-operative v. Ann Arbor*, 305 Mich App 572, 618; 854 NW2d 172 (2014) .............12

*Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994) .........................................................6

*Granader v. Public Bank*, 417 F.2d 75, 82-83 (6th Cir. 1969)..........................................................10

*Helmsley v. City of Detroit*, 320 F.2d 476 (6th Cir. 1963) .................................................................24

*Hollowell v. Career Decisions, Inc*, 100 Mich App 561, 570; 298 NW2d 915 (1980) ....................19

*Jones v. Powell*, 462 Mich. 329, 612 N.W.2d 423, 425 (Mich. 2000)................................................8

*Joy Mgmt. Co. v. City of Detroit*, 440 N.W.2d 654, 657, 176 Mich. App. 722 (Mich. Ct. App. 1989)8

*Kostyu v. Dep't Treasurer*, 170 Mich. App. 123, 427 N.W.2d 566, 568 (Mich. Ct. App. 1988).........8

*Ligon v. Kales*, Nos. 299145, 300096, 2013 Mich. App. LEXIS 992, at *16-17 (Mich. Ct. App. June 6, 2013) ..........................................................................................................................................10

*Long Island Lighting Co. v. Town of Brookhaven*, 889 F.2d 428, 432-33 (2d. Cir. 1989) .................9

*Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999)....................................................................10

*Mich. Baptist Homes & Dev. Co. Ann Arbor*, 396 Mich. 660, 674 (1976) .......................................10

*Moir v. Greater Cleveland Regional Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).......................6

*Moore v. Johnson*, 826 F. Supp. 1106 (W.D. Mich, 1993) ................................................................6

*Morningside Cmty, Org et al. v Eric Sabree et al.*, (Wayne Cnty. Cir. Ct 2016) (No 16-008807-CH) ......................................................................................................................10

*Morningside v. Wayne County Treasurer, et al.*, *unpublished*, No. 336430, (Wayne Circuit LC No. 16-008807-CH) ..........................................................................................................................12

*Munem v. Best Buy Co.*, Mich Court of Appeals No. 224366, *unpublished*, (2002) ........................20

*Pegross v. Oakland County Treasurer*, Case No. 13-2453 (6th Cir. November 18, 2014) .................7

*Rafaeli, et al v. Oakland County, et al*, MSC No. 156849 .................................................................11

*Rafaeli, LLC et al v. Oakland, County of, et al*, Case No. 14-13958 (E.D. Mich. June 4, 2015 ..vii, 9,

*Rouge Parkway Assoc. v Wayne,* 423 Mich. 411, 414, (1985) .......................................... 10

*Seiler v. Charter Township of Northville*, 53 F. Supp. 2d 957 (E.D. Mich 1999) ............................ 13

*Shaughnesy v. Michigan Tax Tribunal*, 420 Mich 246, 248, 362 NW2d 219 (1984) .................. 17, 18

*Smith v. Cliffs on the Bay Condominium Ass'n,* 463 Mich. 420, 617 N.W.2d 536 (Mich. 2000) ........ 8

*Spranger v. City of Warren,* 308 Mich App 477, 483 (2014) ........................................... 11

*Trentadue v .Buckler Lawn Sprinkler*, 479 Mich 378 (2007) ........................................... 18

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) .............................. 13, 14

*Wayside Church v. Van Buren County, et al.,* Case Nos. 15-2463/2525 (6th Cir. February 10, 2017).9

*Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 173 (1985).......................................................................... 13

*Young v. Klutznick,* 652 F.2d 617, 623-24 (6th Cir. 1981)............................................ 25

*Zinermon v. Burch*, 494 U.S. 113, 117 (1990)........................................................ 6

## **Statutes**

MCL 211.34 ...................................................................................... 16
28 USC §1367 (c) (3) ............................................................................. 15
28 U.S.C §1341 ................................................................................... 7
28 U.S.C. §1367 .................................................................................. 13
MCL 205.737(4) ............................................................................... 4, 19
MCL 209.5 ...................................................................................... 2, 3
MCL 211.34 ..................................................................................... 2, 3
MCL 211.34(2) ................................................................................... 16
MCL 211.39 ...................................................................................... 16
MCL 211.78, et seq ............................................................................... 2
MCL 211.78a(2) .................................................................................. 20
MCL 211.78m. ................................................................................... 21
MCL 211.87b or .87f.............................................................................. 20

# INDEX OF EXHIBITS

EXHIBIT A    Property Tax Administration Record for Flossie Byrd

EXHIBIT B    Property Tax Administration Record for William and Billie Hickey

EXHIBIT C    Property Tax Administration Record for Deborah Howard

EXHIBIT D    Property Tax Administration Record for Jeffrey Stevenson

EXHIBIT E    **Rafaeli** Opinion

EXHIBIT F    **Morningside** Opinion

EXHIBIT G    **Munem** Opinion

## STATEMENT OF ISSUES PRESENTED

1.     WHETHER THIS COURT HAS SUBJECT MATTER JURISDICTION OVER
       PLAINTIFFS' COMPLAINT?

2.     WHETHER PLAINTIFFS HAVE FAILED TO STATE A CLAIM AGAINST WAYNE
       COUNTY FOR UNJUST ENRICHMENT?

3.     WHETHER PLAINTIFFS HAVE FAILED TO SATISFY THE PREREQUISITES FOR
       OBTAINING DECLARATORY AND INJUNCTIVE RELIEF?

# CONTROLLING AUTHORITY

Tax Injunction Act, 28 U.S.C. §1341

California v. Grace Bretheren Church, 457 U.S. 393, 411 (1982)

Fair Assessment In Real Estate Assn. v. McNary, 454 U.S. 100, 116 (1981)

Rafaeli, LLC et al v. Oakland, County of, et al,  Case No. 14-13958 (E.D. Mich. June 4, 2015)

Anti Injunction Act, 28 U.S.C. §2283

Morningside v.  Wayne County Treasurer, et al., *unpublished*, No. 336430, (Wayne Circuit LC No. 16-008807-CH)

Munem v.  Best Buy Co., Mich Court of Appeals No. 224366, *unpublished,* (2002)

## INTRODUCTION

Plaintiffs have filed a 3 count, class action Complaint seeking monetary, declaratory and injunctive relief, based on the claim that Plaintiffs and other similarly situated homeowners in the City of Detroit were systematically denied the ability to appeal an alleged over-assessment of their 2017 property taxes. Count 1 alleges denial of due process under the U.S. Costitution and is brought against the named City of Detroit defendants and the named State Tax Commision defendants. Count 2 alleges denial of due process under the Michigan Constitution and is also brought against the named City of Detroit and State Tax Commission defendants.

Count 3 alleges Unjust Enrichment and is brought against defendant Wayne County, only.[1] Although Plaintiffs have stylized Count 3 as an unjust enrichment claim it is predicated on Counts 1 and 2 and is essentially a challenge to the statutory role that Wayne County plays in the assessment and collection of property taxes under the Michigan General Property Tax Act ("GPTA"). Therefore, because all 3 Counts are a direct challenge to the method and manner of assessing and collecting property taxes under state law, this Court lacks subject matter jurisdiction under prevailing principles of law. Accordingly, in moving to dismiss Count 3 for lack of subject matter jurisdiction, Wayne County adopts and incorporates by reference the same arguments set forth by the City of Detroit in its Motion to Dismiss Counts 1 and 2.

In addition, Plaintiffs have failed to state a claim against Wayne County for unjust enrichment (Count 3). Contrary to Plaintiffs' unsupported assertions, neither Wayne County nor the Wayne County Treasurer have the authority to determine whether the City of Detroit under-assessed or over-assessed properties in 2017. The only role played by Wayne County is to ensure that property tax

---

[1] Although Plaintiffs have named Wayne County as a defendant, the allegations are directed at two separate functions within the County, the Department of Equalization under the direction of the Wayne County Executive, and the Wayne County Treasurer, a separately elected official.

assessments made by Detroit and other cities and townships in Wayne County are uniformly applied across property classifications, i.e. equalization. MCL 209.5; MCL 211.34.

Equalization will not remedy unequal assessment levels within a given class of property in a single taxing district. Likewise, the role of the Wayne County Treasurer is to collect unpaid property taxes turned over as delinquent pursuant to its statutory obligations as the foreclosing governmental unit ("FGU") under the GPTA, MCL 211.78, et seq. Therefore, since all of the actions taken by Wayne County or the Wayne County Treasurer were performed in accordance with their statutory obligations, Plaintiffs claim for unjust enrichment should be dismissed.

Finally, in considering the equites of this case it appears that the Plaintiffs are not the injured homeowners that they claim to represent. Plaintiffs would have the Court believe that the City of Detroit over-assessed their homes in 2017 and then denied Plaintiffs and other similarly situated homeowners the ability to challenge the assessments. However, based on the property tax administration ("PTA") records of the Wayne County Treasurer it appears that instead of being over-assessed in 2017, the City of Detroit actually reduced Plaintiffs' property assessments by as much as 21%![2] Moreover, as Plaintiffs themselves admit, the City extended the deadline for appeals to the Board of Assessors on two occasions before waiving this requirement and allowing homeowners the ability to appeal their 2017 assessments directly to the City of Detroit's March Board of Review. Therefore, as Plaintiffs are not injured homeowners who were denied due process, they lack standing to request monetary, declaratory and injuctive relief on behalf of homeowners allegedly over-assessed and denied due process.

---

[2] In addition to the PTA records, Wayne County adopts and incorporates the comprehesive tax records for each Plaintiff proffered by the City of Detroit in its Motion to Dismiss.

## STATEMENT OF FACTS

Defendant Wayne County adopts and incorporates by reference the Statement of Facts set forth in City of Detroit's Motion to Dismiss Counts 1 and 2. Wayne County further states the following relevant facts with respect to Plaintiffs' Count 3, Unjust Enrichment.

Plaintiffs' unjust enrichment claim is predicated on an incorrect representation of Wayne County's role in the assessment and collection of property taxes under Michigan law. According to Plaintiffs, Wayne County is "**complicit**" in the denial of due process (Complaint, ⁋ 11, emphasis added.) because Wayne County "plays an **essential** role in Detroit's property tax assessments...to **examine** all property assessments... and **ensure** that all real property has been equally and uniformly assessed at true cash value." (Complaint, ⁋ 62, emphasis added.) "In this way, Wayne County **knowingly** profits from Detroit homeowners' inability to appeal their property tax assessments...which in turn led to millions of dollars in revenue for the County in the form of auction sales, interest, fines, and fees." (Complaint, ⁋ 65, emphasis added.). Essesntially, Plaintiffs are claiming: (1) that through its role in the assessment and equalization process Wayne County *knew* that the City of Detroit was engaged in mass-overassessments in 2017 and failed to examine and ensure that Plaintiffs and other similar homeowners were not over-assessed; and (2) that with that knowledge, Wayne County (i.e. the Wayne County Treasurer) then chose to collect delinquent taxes and foreclosure sale proceeds.

Plaintiffs have mischaracterized Wayne County's role in the assessment and equalization process. Pursuant to MCL 209.5 and MCL 211.34, Wayne County is required to equalize the aggregate assessed value of each class of property in each of the taxing districts within the county at 50% of the aggregate true cash value of each *class* of property. Equalization is designed to remedy the potential

3

for unequal assessment levels among different taxing districts and among different classes of property with in the same taxing district.

Equalization will not remedy unequal assessment levels made by the City of Detroit, or other taxing districts, within a given class of properties, such as the residential properties at issue in this case. Accordingly, Wayne County's statutory authority is limited to equalization, which doesn't include a statutory duty to "examine" and "ensure" that Detroit has properly assessed properties within a given class.

In addition, the Wayne County Treasurer, who is separate and distinct from Wayne County Equalization, also lacks the statutory authority to "examine" and "ensure" that Detroit has properly assessed its properties in carrying out its statutory duties to collect delinquent taxes and sale proceeds in the foreclosure process. Further, in the event the Treasurer collects delinquent taxes that are later determined to be over-assessed through the appropriate statutory review process, the GPTA provides a remedy in the form of a refund. MCL 205.737(4).

Factually, Plaintiffs' Complaint is more noteworthy for what is missing than for what it contains. Plaintiffs never identify the property addresses or tax identification numbers of the homes that they allegedly own in the City except by the neighborhood. Plaintiffs never identify the actual assessments that were made to their properties in 2017 nor have they produced the "untimely" notices of intent to assess that Plaintiffs allegedly received. Plaintiffs have not offered any quantitative proof that their properties were over-assessed, nor have they alleged or demonstrated that they made an actual attempt to challenge their assessments but were denied. In short, Plaintiffs' Complaint is devoid of the necessary facts required to ascertain whether there is any merit to Plaintiffs' claim that they were injured and denied due process or that they are representative of other homeowners who were injured and denied due process.

Notwithstanding, based on a search of the Wayne County Treasurer Property Tax Administration ("PTA") records by name, it appears that the City of Detroit **reduced** Plaintiffs' property assessments by as much as 21%. **(see Exhibits A – D).** In relevant part, the records show the following with respect to each Plaintiff:

1. **Flossie Byrd.** Ms. Byrd owns Tax Parcel No. 15006121, c/k/a 19311 Spencer, Detroit, MI 48234. The City of Detroit **reduced** the assessed Taxable Value ("TV") from $12,600.00 in 2016 to $10,000.00 in 2017, representing a **21%** reduction.

2. **William and Billie Hickey.** The Hickeys own Tax Parcel No. 22116229, c/k/a 14910 Lamphere, Detroit, MI 48223. The City of Detroit **reduced** the assessed Taxable Value ("TV") from $9,100.00 in 2016 to $7,500.00 in 2017, representing an **18%** reduction.

3. **Deborah Howard**. Ms. Howard owns Tax Parcel No. 17015753, c/k/a/ 19147 Algonac, Detroit, MI 48234. The TV did not change from 2016 to 2017. However, the City of Detroit **reduced** the assessed Taxable Value ("TV") from $9,400.00 in 2015 to $8,000.00 in 2016, representing a **15%** reduction.

4. **Jeffrey Stevenson**. Mr. Stevenson owns Tax Parcel No. 21013672, c/k/a 11790 Nashville, Detroit, MI. The City of Detroit **reduced** the assessed Taxable Value ("TV") from $15,400.00 in 2016 to $14,500.00 in 2017, representing a **6%** reduction.

Based on the above PTA records, the Plaintiffs do not represent injured homeowners as they directly benefited by the method and manner through which the City of Detroit assessed their homes in 2017.

Accordingly, for the reasons stated below, this Court should now dismiss Plaintiffs' Complaint.

5

## ARGUMENT

**I.     STANDARD OF REVIEW.**

Federal Rule of Civil Procedure 12(b)(1) allows a party to motion the Court to dismiss a complaint where the court lacks subject matter jurisdiction over plaintiff's claims. In deciding whether it has subject matter jurisdiction the court may consider affidavits and other documents but in order to survive a motion to dismiss under Rule 12(b)(1), the Plaintiff carries the burden of establishing the court's jurisdiction. See Moir v. Greater Cleveland Regional Transit Auth., 895 F.2d 266, 269 (6th Cir. 1990); DXL, Inc. v. Kentucky, 381 F.3d 511, 516 (6th Cir 2004).

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under 12(b)(6) the court must accept as true all well-pleaded allegations in the complaint and construe them in a light most favorable to the non-moving party. Zinermon v. Burch, 494 U.S. 113, 117 (1990); Gazette v. City of Pontiac, 41 F.3d 1061, 1064 (6th Cir. 1994). However, allegations which merely state conclusions without factual support or where the facts contradict the allegations are insufficient to survive a 12(b)(6) motion. Chapman v. City of Detroit, 808 F.2d 459, 465 (6th Cir. 1986); Moore v. Johnson, 826 F. Supp. 1106 (W.D. Mich, 1993).

**II.     THIS COURT LACKS SUBJECT MATTER JURISDICTION.**

### A.  Plaintiffs' Constitutional Claims and Unjust Enrichment Claim Are Barred By The Tax Injunction Act And Principles Of Comity.

Defendant Wayne County adopts and incorporates by reference the arguments set forth by the City of Detroit in its Motion to Dismiss Counts 1 and 2. In addition, Wayne County makes the following Arguments in support of its Motion to Dismiss Count 3, Unjust Enrichment.

This Court lacks subject matter jurisdiction to hear this state tax dispute, including Plaintiffs' claim for unjust enrichment, which is predicated on Plaintiffs constitutional claims and is essentially

a challenge to the method and manner by which Wayne County equalizes and collects property taxes under the GPTA.

Congress and the Supreme Court have withdrawn jurisdiction from the federal courts to hear challenges to state tax collections as long as there is an adequate remedy provided through the state court.

Congress withdrew federal jurisdiction to issue injunctions against tax collection actions under state law in the Tax Injunction Act (the "TIA"), 28 U.S.C §1341. The Act states:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

The Supreme Court has held that the TIA prohibits declaratory relief as well. In <u>California v. Grace Bretheren Church</u>, 457 U.S. 393, 411 (1982), the Court stated:

> Consequently, because Congress' intent in enacting the Tax Injunction Act was to prevent federal-court interference with the assessment and collection of state taxes, <u>we hold that the Act prohibits declaratory as well as injunctive relief</u>.

(Emphasis added).

The withdrawal of jurisdiction was complete when the Court held that monetary relief was likewise not available:

> <u>[T]axpayers are barred by the principle of comity from asserting §1983 actions against the validity of state tax systems in federal courts</u>. Such taxpayers must seek protection of their federal rights by state remedies, provided of course that those remedies are plain, adequate, and complete, and may ultimately seek review of the state decisions in this Court.

<u>Fair Assessment In Real Estate Assn.</u> v. <u>McNary</u>, 454 U.S. 100, 116 (1981) (emphasis added).

These principles have been applied repeatedly and recently in the 6th Circuit. In <u>Pegross v. Oakland County Treasurer</u>, Case No. 13-2453 (6th Cir. November 18, 2014), the Sixth Circuit affirmed dismissal of a case against Oakland County and its Treasurer in a tax collection case on the basis that

the district court was without subject matter jurisdiction.  The plaintiff alleged the Treasurer had

reneged on agreements to postpone certain foreclosure sales which violated his constitutional rights.

The district court eventually granted summary judgment to the Treasurer, but the Sixth Circuit vacated

the summary judgment, holding that the district court lacked jurisdiction to hear the case and remanded

the case for dismissal.

> [W]here adequate state remedies exist, the Tax Injunction Act ... and
> principles of comity deprive federal courts of jurisdiction to provide the
> remedies that [Plaintiff] Pegross sought.

Pegross at 1599-1600.

This Court further held that Michigan provides a plain, efficient and speedy remedy:

> [Plaintiff's] attempts to obtain relief in that [Michigan] forum may have been
> fruitless, but that fact does not reflect on the adequacy of the remedy that
> Michigan law provides to its taxpayers.

Pegross at 1612.

In Chippewa Trading Co. v. Cox, 365 F.3d 538 (6th Cir. 2004), a Michigan-based Indian tribe

challenged the constitutionality of Michigan's seizure of its untaxed cigarettes and sought monetary

damages under §1983. Court disagreed with the Tribe's assertion that Michigan did not provide a

plain, adequate and speedy remedy:

> **We disagree**. Chippewa has not meaningfully contested the district court's
> conclusion that it has an independent state remedy, quite apart from the TPTA
> administrative procedure, in the form of a direct constitutional challenge to the tax
> scheme in state court. Such a constitutional challenge may be brought in the
> Michigan circuit courts in the first instance. Kostyu v. Dep't Treasurer, 170 Mich.
> App. 123, 427 N.W.2d 566, 568 (Mich. Ct. App. 1988); Joy Mgmt. Co. v. City of
> Detroit, 440 N.W.2d 654, 657, 176 Mich. App. 722 (Mich. Ct. App. 1989),
> overruled in part on other grounds, City of Detroit v. Walker, 445 Mich. 682, 520
> N.W.2d 135, 142 (1994); see Smith v. Cliffs on the Bay Condominium Ass'n, 463
> Mich. 420, 617 N.W.2d 536 (Mich. 2000) (hearing challenge to notice provisions
> of tax statute on federal and state due process grounds). A plaintiff may also bring
> a §1983 injunctive action in the Michigan courts against state officials pursuant to
> the Ex Parte Young doctrine. See Jones v. Powell, 462 Mich. 329, 612 N.W.2d 423,
> 425 (Mich. 2000); Bay Mills Indian Community v. State, 626 N.W.2d 169, 175,

244 Mich. App. 739 (Mich. Ct. App. 2001). The availability of a §1983 action in state court significantly supports federal court abstention under the comity doctrine. Fair Assessment, 454 U.S. at 116-17; Long Island Lighting Co. v. Town of Brookhaven, 889 F.2d 428, 432-33 (2d. Cir. 1989).

Chippewa at 542-543 (emphasis added).

Significantly, both of these decisions were recently reaffirmed by the 6th Circuit in Wayside Church v. Van Buren County, et al. Case Nos. 15-2463/2525 (6th Cir. February 10, 2017), In Wayside, the Sixth Circuit affirmed the dismissal of a taking claim made under the Michigan GPTA on the basis that the United States District Court was without subject matter jurisdiction under the TIA and principles of comity. The Wayside Court made clear that Michigan provides an adequate remedy for these constitutional claims:

> "Plaintiffs here brought an action for both a declaratory judgment and monetary damages, and thus, both the Tax Injunction Act and comity are at play. Because the two doctrines only allow federal courts to exercise jurisdiction when states courts cannot provide "plain, adequate, and complete" remedies, only one analysis is required. Fair Assessment, 454 U.S. at 116 n. 8 … the district court and Plaintiffs erred in concluding could not challenge the GPTA on constitutional grounds in state court. **In fact, such a plain, adequate, and complete avenue for redressing their claims was available.** We therefore conclude that the district court erred in finding that the claims were not barred by the Tax Injunction Act and the doctrine of comity, and as a result, mistakenly determined that it could exercise subject matter jurisdiction over Plaintiffs' claims. Consequently, the district court lacked jurisdiction to entertain this action."

Wayside at 13 (emphasis added).

The District Courts have, of course, also followed these holdings of the Supreme Court and the Sixth Circuit. In Rafaeli, LLC et al v. Oakland, County of, et al, *unpublished,* Case No. 14-13958 (E.D. Mich. June 4, 2015), the District Court held that the TIA deprived the Court of jurisdiction. (Opinion attached as **Exhibit E**). In Rafaeli, the Appellants, who had lost their property pursuant to a foreclosure judgment entered under the GPTA, claimed that the due process afforded by the GPTA violated federal due process standards. In addition, they filed similar claims to the instant case

regarding denial of equal protection, taking without just compensation, and requested class certification. The District Court granted the Defendants' Motion to Dismiss on the grounds that the TIA deprived the Court of jurisdiction. The Court held:

> "Tax delinquency foreclosure sales are inexorably intertwined with the collection of past due taxes: they are the mode of collection. The Tax Injunction Act deprives this Court of jurisdiction over suits challenging the collection of state taxes where an adequate remedy lies in state court. Because Appellants have adequate remedies in state court, Appellants' claims are barred by the Tax Injunction Act and by comity." Rafaeli at 1633.

Further, as recognized by the Rafaeli Court, taxpayers have challenged the tax foreclosure process in Michigan courts on constitutional grounds and have been afforded relief:

> And contrary to plaintiffs' argument, Michigan courts have heard equal protection challenges to the GPTA and to the application of the GPTA. See, e.g., Rouge Parkway Assoc. v Wayne, 423 Mich. 411, 414, (1985) (considering facial challenge based on Michigan constitution equal protection clause to collection fee imposed under GPTA); Mich. Baptist Homes & Dev. Co. Ann Arbor, 396 Mich. 660, 674 (1976) (holding that denying exemptions under the GPTA in that case did not violate equal protection under U.S. Constitution).

> Moreover, the Court takes judicial notice of a recent suit filed by the American Civil Liberties Union in Wayne County Circuit Court against Wayne County for its tax foreclosure practices, alleging in relevant part that its practices violate the Fair Housing Act and constitutional due process. Complaint at 46-48, Morningside Cmty. Org et al. v Eric Sabree et al., (Wayne Cnty. Cir. Ct 2016) (No 16-008807-CH); see Lyons v. Stovall, 188 F.3d 327, 332 n.3 (6th Cir. 1999) ("[I]t is well-settled that 'federal courts may take judicial notice of proceedings in other courts of record' . . . . ") (quoting Granader v. Public Bank, 417 F.2d 75, 82-83 (6th Cir. 1969)).

> And Michigan state courts have adjudicated inverse condemnation (i.e., takings) and quiet title actions in tax foreclosure cases. See, e.g., Ligon v. Kales, Nos. 299145, 300096, 2013 Mich. App. LEXIS 992, at *16-17 (Mich. Ct. App. June 6, 2013) (noting prior adjudication of inverse condemnation claim after tax foreclosure); Booker v. City of Detroit, 251 Mich. App. 167, 171-72 (2002) (noting adjudication of quiet title and inverse condemnation claims against city's default foreclosure judgment for delinquent city taxes), rev'd and remanded on other grounds 469 Mich. 892, 893 (2003) ("Under the particular circumstances of this case, in which the city has retained the plaintiff's tax payment after disposing of the property at a foreclosure sale, we find that city has received a benefit from plaintiff, which benefit it would be inequitable for the city to retain.").

10

Order RE 78, Page ID # 2622-2624.

It is worth noting that after the District Court dismissed Plaintiffs' action in <u>Rafaeli,</u> the <u>Rafaeli</u> plaintiffs then separately refiled their actions in state court. The Rafaeli plaintiffs sought redress in Oakland County Circuit Court for monetary damages based on constitutional due process violations, including a takings claim and a claim for unjust enrichment. Plaintiffs' claims were dismissed by the Oakland County Circuit Court. After the Michigan Court of Appeals affirmed the decision the plaintiffs sought leave to appeal in the Michigan Supreme Court which was granted. Significantly, all of plaintiffs' claims, <u>including a claim for unjust enrichment</u> are currently pending and awaiting a decision by the Michigan Supreme Court. <u>Rafaeli, et al v. Oakland County, et al</u>, MSC No. 156849.

All of these cases directly contradict Plaintiff's' argument that they cannot get a plain, speedy and adequate remedy in Michigan State Courts. Again, as stated by this Court in <u>Pegross, supra:</u>

> [Plaintiff's] attempts to obtain relief in that [Michigan] forum may have been fruitless, but that fact does not reflect on the adequacy of the remedy that Michigan law provides to its taxpayers. <u>Id</u>. at 1612.

Moreover, all of these cases equally apply to Plaintiffs' unjust enrichment claim, which despite the phrasing of the claim is clearly based on a challenge to Wayne County's role in state taxation, which lies within the exclusive and original jurisdiction of the Michigan Tax Tribunal ("MTT").

### B. Plaintiffs Have A Plain, Speedy And Efficient State Remedy To Address Their Claims Before the Michigan Tax Tribunal.

As argued by the City of Detroit in its Motion to Dismiss, **and adopted and incorporated into this brief**, Plaintiffs were afforded a plain, speedy and efficient remedy to address their constitutional claims through the Board of Assessor, the Detroit Board of Review and, if necessary, through a de novo review by the Michigan Tax Tribunal of their tax assessments, including any alleged due process violations. *See Spranger v. City of Warren*, 308 Mich App 477, 483 (2014).

In addition, Plaintiffs' attempt to couch a challenge to Wayne County's role in state taxation as an unjust enrichment claim that lies outside the jurisdiction of the MTT, must fail. As recognized by the Michigan Court of Appeals in <u>Morningside v. Wayne County Treasurer, et al.</u>, *unpublished*, No. 336430, (Wayne Circuit LC No. 16-008807-CH) "But where a claim's gravamen lies in a factual issue that falls under the exclusive jurisdiction of the MTT, the claim will not survive in a circuit court by "[m]erely couching a challenge to an assessment in constitutional terms[.]" Id. At 3, quoting *Forest Hills Co-operative v. Ann Arbor,* 305 Mich App 572, 618; 854 NW2d 172 (2014). (Opinion attached as **Exhibit F** ).

Based on the allegations against Wayne County in this case, Plaintiffs had a statutory remedy to address their alleged 'unjust enrichment' claim. Specifically, MCL 205.737(4) provides in relevant part:

> (4) If the taxpayer paid additional taxes as a result of the unlawful assessments on the same property after filing the petition…the taxpayer, not later than the filing deadline prescribed in section 35 for a proceeding before the tribunal…, may amend the petition to join all of the claims for a determination of the property's taxable value… and for a **refund** of payments based on the unlawful assessments. (emphasis added.)

Therefore, it is clear that Plaintiffs' claims are barred by the TIA and principles of comity, including Plaintiffs' claim for unjust enrichment which is premised on Plaintiffs' constitutional claims and is essentially a challenge to Wayne County's role in the assessment and collection of property taxes under the GPTA.

### C. This Court Also Lacks Jurisdiction Because Plaintiffs' Unjust Enrichment Claim Is Not Ripe For Adjudication.

The ripeness doctrine prohibits federal courts from exercising their jurisdiction until a case or controversy involving a sufficiently concrete injury or threat of injury is presented. US Const, art III, §2, cl 1. <u>Digital Props, Inc  v. City of Plantation</u>, 121 F.3d 586, 589 (11th Cir. 1997). "Ripeness is more than a mere procedural question; it is determinative of jurisdiction. If a claim is unripe, federal

12

court lacks subject matter jurisdiction and the complaint must be dismissed." <u>Seiler v. Charter Township of Northville</u>, 53 F. Supp. 2d 957 (E.D. Mich 1999) (quoting <u>Bigelow v. Michigan Dept of Nat'l Resources</u>, 970 F.2d 154 (6th Cir. 1992); <u>Community Treatment Centers v. City of Westland</u>, 970 F. Supp. 1197, 1209 (E.D. Mich. 1997); <u>Seiler</u>, supra. The underlying rationale for the ripeness doctrine is to prevent the federal courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements. <u>Abbott Laboratories v. Gardner</u>, 387 U.S. 136, 87 S. Ct. 1507 (1967).

In <u>Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City</u>, 473 U.S. 173 (1985), the Supreme Court held that finality is a threshold condition for federal jurisdiction and the ripeness requirements for taking claims. <u>Williamson</u> established a two-prong ripeness test and held that a federal taking claim may not be brought until the owner has first sought redress of the alleged constitutional deprivations through all available state remedies and procedures, and has pursued such remedies to completion. Id. A plaintiff must demonstrate exhaustion of state remedies before asserting federal constitutional takings claim in federal court. Id. The rationale for this requirement is that "[i]f a state provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." <u>Williamson</u>, supra at 194-195.

As discussed above, Plaintiffs have not exhausted all available state remedies. Therefore, Plaintiffs' Unjust Enrichment claim is not ripe for adjudication and this court lacks jurisdiction.

### III.   THIS COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' STATE LAW CLAIMS.

"[Supplemental] jurisdiction is a doctrine of discretion, not of plaintiff's right." <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715 (1966). 28 U.S.C. §1367, which governs the federal courts' exercise of supplemental or pendent jurisdiction, provides:

(a) Except as provided in subsections (b) and (C) or as expressly provided otherwise by Federal statute, **in any civil action of which the district courts have original jurisdiction, the district courts have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy** under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

    (1)    the claim raises a novel or complex issue of State law,

    (2)    the claim substantially predominates over the claim or claims over which the district court has original jurisdiction.

    (3)    **the district court has dismissed all claims over which it has original jurisdiction, or**

    (4)    in exceptional circumstances, **there are other compelling reasons for declining jurisdiction**.

The Supreme Court has held that the justification for supplemental jurisdiction under §1367 "lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims ..." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) (internal cites omitted). '[A] federal court should consider and weigh in each case, fairness, and comity" in determining whether to exercise, or continue to exercise, supplemental jurisdiction. City of Chicago v. Int Coll of Surgeons, 522 U.S. 156, 172-72 (1997).

Here, in addition to their Federal constitutional claim, Plaintiffs assert denial of due process under the Michigan Constitution and a common law claim for unjust enrichment, both of which are premised on state law and actionable in the state courts. As discussed above, this Court should dismiss Plaintiffs' Federal constitutional claim because it lacks subject matter jurisdiction under the TIA and

principles of comity. Accordingly, without a surviving federal claim, there is no reason for the Court to exercise its supplemental jurisdiction over Plaintiffs' state claims. 28 USC §1367 (c) (3).

## IV.  PLAINTIFFS HAVE FAILED TO STATE A CLAIM AGAINST WAYNE COUNTY FOR UNJUST ENRICHMENT.

Plaintiffs' Complaint is filled with more allegory and vague references to cherry-picked statistics than actual facts and evidence related to the Plaintiffs and their specific circumstances. As alleged, the gravamen of Plaintiffs' unjust enrichment claim is that Wayne County knew that the City was engaged in mass over-assessments in 2017 based on its equalization duty to examine and ensure that Plaintiffs and other similar homeowners were not over assessed and, in failing that duty, then collected taxes and/or foreclosure sale proceeds in excess of what is allowed.  See Complaint, ¶¶ 11, 62, 65 and 110. In short, Plaintiffs are claiming that Wayne County collected too much money in the form of  taxes, interest, fines and fees and or foreclosure sale proceeds. Plaintiffs' claim for unjust enrichment must fail.

### A.  Plaintiffs' Assertion That The County Is Obligated To 'Double Check' The City's Assessments Is Incorrect As A Matter Of Law.

Plaintiffs repeatedly state that the County played a role in alleged the over-assessment of their properties in 2017.  In paragraph 62 of Plaintiffs' Complaint, they state:  Wayne County also plays an essential role in Detroit's property tax assessments themselves."  In that same paragraph, Plaintiffs surmise that "the Michigan General Property Tax Act requires Wayne County to examine all property assessments within its jurisdiction and to ensure that all real property 'has been equally and uniformly assessed at true cash value.'"

Plaintiffs continue in paragraph 63, "Because of its role in preparing and equalizing Detroit assessments, Wayne County is implicated in Detroit's rash of over-assessments that have

systematically violated the Michigan Constitution's guarantee that only 50 percent of a home's market value may be taxed."

In paragraph 65, Plaintiffs state, "In this way, Wayne County knowingly profits from Detroit homeowners' inability to appeal their property tax assessments. Wayne County's failure to help ensure that Detroit assessed homes within the bounds of Michigan law led to a significant number of property tax foreclosures, which in turn led to millions of dollars in revenue for the County in the form of auction sales, interest, fines, and fees."

Plaintiffs assert that the County's role, through its Assessment & Equalization Division, is to double check the work of every assessor in the County, to "ensure" that every parcel in Wayne County is properly assessed. This is a ridiculous statement and is legally incorrect. Plaintiffs have, again, cherry-picked one part of one sentence within the GPTA to support this theory. They are, intentionally or otherwise, conflating the County's obligation to *"equalize"* assessments with the local assessor's obligations to *"assess"* individual properties within his or her community.

It is the responsibility of the local governing unit to actually *assess* the properties. MCL 211.39 (Assessment of taxes), subsection (1), provides:

> The appropriate assessing officer *in each local tax collecting unit* shall assess the taxes apportioned to that local tax collecting unit according to the taxable values entered in the assessment roll of that local tax collecting unit for the year.

(Emphasis added).

Section 34 of the GPTA (MCL 211.34) outlines the duties of a county related to *equalization.* MCL 211.34(2) provides:

> The county board of commissioners shall examine the assessment rolls of the townships or cities and ascertain whether the real and personal property in the respective townships or cities has been equally and uniformly assessed at true cash value. If, on the examination, the

> county board of commissioners considers the assessments to be
> relatively unequal, it shall equalize the assessments by adding to or
> deducting from the valuation of the taxable property in a township or
> city an amount which in the judgment of the county board of
> commissioners will produce a sum which represents the true cash
> value of that property, and the amount added to or deducted from the
> valuations in a township or city shall be entered upon the records.

*Equalization* is the act of establishing uniform valuation throughout a taxing district (the City

of Detroit), which is required by Article 9, Section 3 of the Constitution of Michigan. Equalization

has nothing to do with assessing properties.

The Michigan Supreme Court has summarized both assessment and equalization as follows:

> The local assessors in each of Michigan's townships, villages, and
> cities, are required, each year, to determine the true cash value of
> taxable property located within the boundaries of the local taxing
> district.  The local assessors' duty is to determine the true cash value
> of each item of property as of December 31 of the year preceding the
> tax year.  These local valuations are merely tentative, however,
> because each item of property will ultimately be assessed at 50% of its
> true cash value as that value is finally determined after completion of
> the county and state equalization process...
>
> ***
>
> Pursuant to Const. 1963, art 9, sec 3, the Legislature has provided for a
> system of equalization.  Beginning early in April and ending in May of
> each year, the various county boards of commissioners meet to
> equalize the aggregate assessed value of each class of property in each
> of the taxing districts within their respective counties at 50% of each
> class' aggregate true cash value.  Once county equalization is
> complete, the State Tax Commission meets to equalize aggregate
> assessed values among each of Michigan's 83 counties.  The State Tax
> Commission will add to or deduct from the aggregate valuation of
> each class of property within each county such amount as will bring
> the aggregate assessment of those classes to 50% of the aggregate true
> cash value of the property within the class.

*Shaughnesy v. Michigan Tax Tribunal*, 420 Mich 246, 248, 362 NW2d 219 (1984)(citations

omitted).

17

The "local tax collecting unit," the City of Detroit in the instant case, bears the responsibility of performing the assessment.  The County does not perform that role, either through the office of the Treasurer or through the Equalization Division.  Plaintiffs' averments that the County is obligated to "monitor and correct" (see Plaintiffs' Complaint, ¶107) property tax assessments for the City of Detroit and the other 42 communities within Wayne County are simply not accurate.  There are literally hundreds of thousands of individual parcels in Wayne County, with the City of Detroit accounting for 380,000 distinct properties.  See City's Brief at p 7.  Any attempt to convince this Court that the County's Equalization Division is responsible for this type of oversight is folly.

Plaintiffs have failed to state a claim because their entire premise is that *as a result of* the County's "complicity" (see Complaint, ¶11) in the City of Detroit's alleged over-assessment and the County's failure to 'double check' the City of Detroit's assessments, the County has been unjustly enriched (see Complaint, ¶110).  Because equalization is not a "remedy" to unequal assessment levels within a given class of property in a single taxing district (*see Shaughnesy* at 249-250), the County had no legal duty to perform assessments; that obligation properly belongs exclusively to the City of Detroit.  As a result, Plaintiffs' claim for unjust enrichment cannot proceed.

### B.  Plaintiffs' Common Law Count Of Unjust Enrichment Cannot Proceed As A Matter Of Law Because Such A Claim Has Been Displaced By State Law.

The Legislature has the authority to abrogate the common law.  Further if a statutory provision and the common law conflict, the common law must yield.  Plaintiff's common law count for unjust enrichment has been displaced by the Michigan Legislature and as a result must fail.

The Michigan Supreme Court observed in *Trentadue v. Buckler Lawn Sprinkler*, 479 Mich 378 (2007):

> In general, where comprehensive legislation prescribes in detail a course of conduct to pursue and the parties and things affected, and designates specific limitations and exceptions, the Legislature will be

found to have intended that the statute supersede and replace the
common law dealing with the subject matter.

*Id at 389* (citations omitted).

In the instant case, Plaintiffs' claim against the County is superseded by the provisions of the GPTA, which is comprehensive legislation prescribing in detail property subject to taxation, exemptions, the method of assessment, the required record-keeping, appeal procedures, collection procedures, turnover to the County, forfeiture, redemption, foreclosure, sale and remedies, including fees and interest, and including use of the money resulting from the sale of the foreclosed property. Moreover, as noted above, the GTPA provides specific relief in the event of an illegal over-assessment pursuant to MCL 205.737(4).

The County's methodology by which it acts as a foreclosing governmental unit is driven exclusively by statute; the County has no discretion in how it performs its functions. Further, Plaintiffs' claim against the County is, as previously argued, based entirely on the false premise that the County had the statutory duty to oversee, supervise and 'double check' the work of the City of Detroit assessor. The County has only ever done what the GPTA mandates. As a result of this statutory scheme, which is followed by the County, Plaintiffs' claim must fail because Plaintiffs have not, and cannot, state a claim for the common law count of unjust enrichment.

### C. Plaintiffs' Claim For Unjust Enrichment Must Fail Because Plaintiffs Have Failed To Plead That The County Has Been "Enriched".

Even if the statutory scheme outlined in the GPTA did not displace the claim, Plaintiffs' count for unjust enrichment must fail because the County has not been "enriched" in any way by any of these plaintiffs. Unjust enrichment is the "process of imposing a contract-in-law." *Hollowell v. Career Decisions, Inc,* 100 Mich App 561, 570; 298 NW2d 915 (1980). "The essential elements of such a claim are (1) receipt of a benefit by the defendant from the plaintiff and (2) which benefit it is

inequitable that the defendant retain." <u>Munem v. Best Buy Co.,</u> Mich Court of Appeals No. 224366, *unpublished,* (2002), quoting <u>*Barber v. SMH (US), Inc.,*</u> 202 Mich App 366, 375; 509 NW2d 791 (1993). (Opinion attached as **Exhibit G**).

The *Munem* case is instructive to the extent that the Court of Appeals held that because the plaintiff in that matter failed to allege any loss that *he suffered* as a result of Best Buy's misleading advertisements, the trial court acted properly in dismissing his count for unjust enrichment. In other words, if the benefit allegedly obtained by the defendant did not come at the expense of the plaintiff, such claim must fail.

In the instant case, the County has not benefitted from any of the plaintiffs for the simple reason that Plaintiffs have failed to allege that the County has received any of their money. Plaintiffs have alleged that they all belong to (at least) one of four classes of claimant: (1) the "Detroit Homeowners Class" (Detroit taxpayers who allegedly received deficient notices); (2) the "Overpaying Subclass" (Detroit tax payers who were over-assessed), to which plaintiffs Howard, Byrd and Stevenson claim to belong; (3) the "Delinquent Subclass" (Detroit taxpayers who are delinquent on their property tax payments because of the over-assessments), to which plaintiffs Byrd and Stevenson claim to belong; and (4) the "Foreclosure Subclass" (Detroit taxpayers whose delinquency renders their home "subject to foreclosure by Wayne County"), to which plaintiff Stevenson claims to belong.

1999 PA 123 outlines the process of foreclosing delinquent properties. Ad valorem real property taxes become a lien on property on July 1 (summer taxes) and December 1 (winter taxes) of the tax year. Taxes that remain unpaid as of the end of February the following year are turned over delinquent to the county treasurer for collection on March 1. MCL 211.78a(2).

The county treasurer pays the local taxing units the amounts turned over as delinquent out of the county's delinquent tax revolving fund established under MCL 211.87b or .87f. The delinquent

tax revolving fund allows the county treasurer to provide local units of government necessary operating funds at the time local taxes are turned delinquent. The county treasurer then becomes responsible for collection of the delinquent taxes.

Plaintiffs have failed to plead that any of them actually paid the Wayne County Treasurer for their 2017 taxes, whether or not they were over-assessed. While the Complaint lacks details about which of Plaintiffs' properties are at issue, the fact of the matter is that the only way the Wayne County Treasurer receives any money or is "enriched" in any manner is if either: (1) a property is tendered to the County for collection as delinquent and the *statutorily required* fines and interest are paid along with the delinquent taxes; or (2) if the property is actually foreclosed and sold at the County's public tax auction, for a price that yields at least the amount of taxes, fees and interest owed. *See* MCL 211.78m.

Plaintiffs make much of the concept that the County adds statutory fees and interest when it forecloses on a property, alleging that the County "makes millions of dollars in the process." See Plaintiffs' Complaint, ¶¶ 60, 61. However, Plaintiffs have failed to plead that any of them actually fall into this category; therefore, Plaintiffs have failed to plead that the County has benefited financially from any of them. There is no evidence that even the "Overpaying Subclass" has (despite the title) paid the County any money. As a result, none of the Plaintiffs can sustain a claim for unjust enrichment against the County because no "enriching" has occurred.

## V.   PLAINTIFFS ARE NOT ENTITLED TO DECLARATORY AND INJUNCTIVE RELIEF.

Plaintiffs have, without specifying the grounds for such relief or including the same in a separate count, asked this Court to enter an injunction "requiring Wayne County to stop seeking foreclosure proceedings against homeowners in the Foreclosure Subclass." *See* Plaintiffs' Complaint, p 40, Prayer for Relief, subparagraph (G). Similarly, they have asked the Court for a "declaration that

Wayne County was unjustly enriched by property tax foreclosure sales and associated interest, fines, and fees because it failed to ensure that Detroit did not unlawfully assess property values in violation of the Michigan Constitution…" *See* Plaintiffs' Complaint, p 40, Prayer for Relief, subparagraph (F). Because Plaintiffs have failed to plead even perfunctory facts related to their situations, this Court should deny both requests.

### A. Plaintiffs' Request For Injunctive Relief Must Fail.

Fed R Civ P 65 governs the issuance of injunctions and restraining orders. This Court should deny Plaintiffs' request for injunctive relief and dismiss any such claim, as Plaintiffs have completely failed to outline any of the necessary elements required.

Fed R Civ P 65(b) requires this Court to balance and consider four factors in determining whether a preliminary injunction is proper: (1) the likelihood of plaintiff's success on the merits; (2) whether the injunction will save the plaintiff from irreparable injury; (3) whether the injunction would harm others; and (4) whether the public interest would be served by the injunction. *In re DeLorean Motor Co.,* 755 F.2d 1223, 1228 (6th Cir. 1985). These four factors are to be balanced; they are not prerequisites that must be met. *Id.* at 1229.

Plaintiffs in this case have failed to make even a prima facie supporting any of the required elements that would justify an injunction.

First and most importantly, the plaintiffs in the instant case have not been aggrieved by the County's foreclosure process, as none of the plaintiffs have had any of their properties foreclosed or sold at the tax sale, nor have they pled the same. Further, Plaintiffs have failed to point to any specific facts related to any of their specific properties that would lead the Court to believe that the Plaintiffs have suffered in any way from the statutory foreclosure process followed by the County.

22

In fact, for tax year 2017, the year complained of by Plaintiffs, every one of the Plaintiffs experienced a net reduction in tax bills from the prior year. (see **Exhibits A-D**).

It is difficult to imagine a scenario where, after observing that every single plaintiff experienced a reduction in their SEV's between 2016 and 2017, Plaintiffs could convince the Court that such reduction simply was not enough, nor have they alleged any facts to support such a conclusion.

Additionally, Plaintiffs have also failed to show or even allege that *but for* the County following the statutory foreclosure process, any of the plaintiffs would have been able to satisfy their tax obligations, anyway. Their Complaint is completely bereft of even a suggestion, much less specific allegations, that Plaintiffs could have, and would have, satisfied their tax obligations on their un-specified and unknown properties if the County had engaged in a different process than the one established by statute.

Plaintiffs' own allegations fail to support the prospect that they will likely succeed on the merits of their single claim against the County (particularly given the significant legal hurdles in front of them). At paragraph 64 of their Complaint, Plaintiffs allege that "a full quarter of property tax foreclosures would not have occurred but for Detroit's over-assessments." Plaintiffs glean this statistic from a law review article from the University of California-Irvine Law Review, without engaging in any substantive analysis of what this means to them. But, even assuming this statistic is true, that would mean that 75% of foreclosures would have occurred anyway. This is hardly a statistic that supports an injunction.

Plaintiffs have failed to cite any case law or examine the elements that would be required to grant an injunction. Plaintiffs have neglected to allege with any specificity any facts that would support the elements required to sustain an injunction.

**B.  Plaintiffs' Request For Declaratory Relief Must Fail.**

Likewise, Plaintiffs have failed to plead facts sufficient for the Court to even consider granting declaratory relief of the type sought.  The Declaratory Judgment Act (Act) of 1934, codified at 28 U.S.C. § 2201, provides that federal courts "may declare the rights and other legal relations of any interested party seeking such declaration," given that "a case of actual controversy within [their] jurisdiction" exists. Thus, the Act is not an independent source of federal jurisdiction, and is instead procedural only.  *Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 81 L. Ed. 617, 57 S. Ct. 461 (1937).

Plaintiffs have not even cited any law to support their sweeping request.  Additionally, because this Court lacks jurisdiction, it is not in a position to utilize the request for declaratory relief to establish that jurisdiction or grant the relief requested.  *See also Helmsley v. City of Detroit*, 320 F.2d 476 (6th Cir. 1963)(Declaratory Judgment Act challenge to Michigan property tax assessment under due process and equal protection principles barred because Michigan courts provide an adequate remedy).

## VI.   PLAINTIFFS LACK STANDING TO ASSERT THE DUE PROCESS RIGHTS OF OTHER INJURED HOMEOWNERS.

FRCP 17(a) generally requires that "every action shall be prosecuted in the name of the real party in interest." The Supreme Court enunciated the test for Article III standing in *Allen v. Wright, 468 U.S. 737, 104 S. Ct. 3315, 82 L. Ed. 2d 556 (1984)*. The *Allen* Court began its analysis by recognizing that "in essence the question of standing is whether the litigant is entitled to have the Court decide the merits of the dispute or of particular issues." *Id*. at 3324. The Court identified three components to the standing analysis which are to guide courts in this determination: "A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be repressed by the requested relief." *Id*. at 3325.

As to the first prong, "*personal* injury", the injury must be "distinct and palpable" to the plaintiff and not "abstract" or "conjectural" or "hypothetical". 104 S. Ct. at 3325; *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 72-73, 57 L. Ed. 2d 595, 98 S. Ct. 2620 (1978). *Accord, Young v. Klutznick*, 652 F.2d 617, 623-24 (6th Cir. 1981). The Court must consider: "Is the injury too abstract, or otherwise not appropriate, to be considered judicially cognizable?" *Allen v. Wright, supra*, 104 S. Ct. at 3325. Second, the injury "must be 'fairly' traceable to the challenged action . . ." *Id.*

The Court should determine whether "the line of causation between the illegal conduct and injury [is] too attenuated." *Id.* Third, the "relief from the injury must be likely to follow from a favorable decision." *Id.* In other words, "is the prospect of obtaining relief from the injury as a result of a favorable ruling too speculative?" *Id.*

In this case, Plaintiffs allege that they are representative of other homeowners in the City of Detroit who were injured by the over-assessment of their property and who were then denied the ability to challenge the assessments in violation of their due process rights. However, Plaintiffs have not offered any evidence that any of their properties, or anyone else's property was in fact over-assessed. The reason is simple. Plaintiffs were not injured by an over-assessment of their respective properties in 2017. In fact, Plaintiffs financially benefited as a result of significant reductions made by the City in 2017. Specifically, the PTA records (**Exhibits A – D**) of the Wayne County Treasurer with respect to each Plaintiff indicate the following:

1. **Flossie Byrd.** Ms. Byrd owns Tax Parcel No. 15006121, c/k/a 19311 Spencer, Detroit, MI 48234. The City of Detroit **reduced** the assessed Taxable Value ("TV") from $12,600.00 in 2016 to $10,000.00 in 2017, representing a **21%** reduction.

2. **William and Billie Hickey.** The Hickeys own Tax Parcel No. 22116229, c/k/a 14910 Lamphere, Detroit, MI 48223. The City of Detroit **reduced** the assessed Taxable Value ("TV") from $9,100.00 in 2016 to $7,500.00 in 2017, representing an **18%** reduction.

3. **Deborah Howard**. Ms. Howard owns Tax Parcel No. 17015753, c/k/a/ 19147 Algonac, Detroit, MI 48234. The TV did not change from 2016 to 2017. However, the City of Detroit **reduced** the assessed Taxable Value ("TV") from $9,400.00 in 2015 to $8,000.00 in 2016, representing a **15%** reduction.

4. **Jeffrey Stevenson**. Mr. Stevenson owns Tax Parcel No. 21013672, c/k/a 11790 Nashville, Detroit, MI. The City of Detroit **reduced** the assessed Taxable Value ("TV") from $15,400.00 in 2016 to $14,500.00 in 2017, representing a **6%** reduction.

It is difficult to imagine a scenario where, after observing that every single plaintiff experienced a reduction in their TVs' between 2016 and 2017, Plaintiffs could convince the Court to provide monetary, declaratory and injunctive relief to Plaintiffs and other similar homeowners based on a claim that such a reduction simply was not enough. Therefore, as Plaintiffs have failed to establish an actual injury based on an actual overassessment of their respective properties, Plaintiffs lack standing to bring an action for unjust enrichment on their own behalf let alone on behalf of other homeowners. " A plaintiff must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties." *Fieger v. Commissioner of Insurance*, 174 Mich App 467, 471; 37 NW2d 271 (1988).

WHEREFORE, Defendant Wayne County, respectfully requests that this Honorable Court enter an order granting its Motion To Dismiss Plaintiffs' Class Action Complaint with prejudice, and award costs and attorney fees so wrongfully sustained.

Respectfully submitted,

JAMES W. HEATH
Wayne County Corporation Counsel

BY:    /s/ James Berry_____
**JAMES G. BERRY (P36051)**
**JAMES M. JERNIGAN (P57035)**
Attorneys for Defendant Wayne County

Dated: March 31, 2020

## **CERTIFICATE OF SERVICE**

On   March 31, 2020 I certify that I electronically filed this document with the Clerk of the Court through the ECF System, which will send notice of such electronic filing to all counsel of record registered electronically.

BY:    /s/ James Berry_____
**JAMES G. BERRY (P36051)**
**JAMES M. JERNIGAN (P57035)**
Attorneys for Defendant Wayne County