UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBORAH HOWARD, *et al.*,

    Plaintiffs,

v.

THE CITY OF DETROIT, *et al.*,

    Defendants.

_____/

Case No. 20-10382

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANTS'
MOTIONS TO DISMISS [15][22][25]**

Plaintiffs, who are Detroit homeowners, allege their due process rights under the United States and Michigan Constitutions were violated by the City of Detroit and other local and state entities when they received purportedly untimely and deficient property tax assessment notices in 2017. Plaintiffs also bring an unjust enrichment claim against Wayne County. Defendants have filed motions to dismiss. (ECF Nos. 15, 22, 25.) Plaintiffs filed one omnibus brief opposing Defendants' motions. (ECF No. 28.) Defendants have filed replies supporting their motions. (ECF Nos. 29, 31, 32.) The Court finds that the decision process would not be significantly aided by oral argument. Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), Defendants' motions will be decided on the briefs and without oral argument. For the reasons discussed below, the Court GRANTS Defendants' motions to dismiss.

**I.     Background**

Plaintiffs Deborah Howard, Flossie Byrd, William and Billie Hickey, and Jeffrey Stevenson bring this class action lawsuit on behalf of themselves and other similarly situated homeowners, seeking injunctive and monetary relief. (ECF No. 1.) They allege

1

that in 2017, after the City of Detroit completed a reappraisal of all residential property, the Detroit government—the City of Detroit; the Offices of the Chief Financial Officer and Assessor of the City of Detroit; and Mayor Michael Duggan and Assessor Alvin Horhn, acting in their official capacities ("the Detroit Defendants")—failed to notify Detroit homeowners of their new property assessments until it was too late to appeal those assessments. According to Plaintiffs, this resulted in the violation of every Detroit homeowner's right to due process, and because homeowners did not have the opportunity to appeal and "lower frequently over-assessed" property taxes, some homeowners paid more than they should owe, faced delinquency, or had their properties foreclosed on. (*See id.* at PgID 2.) Plaintiffs aver that because Michigan's government had assumed control of Detroit's property tax assessment process from 2014 through 2017, State Tax Commissioners W. Howard Morris and Leonard D. Kutschman and STC Executive Director David A. Buick, all acting in their official capacities, ("the Michigan Defendants") also bear responsibility for the alleged denial of their due process rights. Plaintiffs further allege that Wayne County was "complicit" in this denial of due process and was unjustly enriched by the collection of delinquency and foreclosure revenues, interest, fines, and fees. (*See id.* at PgID 7.)

More specifically, Plaintiffs allege that in 2017, the Detroit Defendants mailed 263,516 residential property tax assessment notices on February 14, stating the deadline to appeal to the local Board of Assessors was four days later—on February 18. The notices stated that appeal to the Board of Assessors by the deadline was "required to protect your right to appear before the March Board of Review[, and] [p]rotest at the March Board of Review was necessary to protect your right to further appeal to the

2

Michigan Tax Tribunal." (ECF No. 1-1, PgID 43.) According to Plaintiffs, due to the late mailings, the City of Detroit later extended the Board of Assessors appeal deadline by ten additional days, to February 28, 2017, and also "waived" the Board of Assessors appeal, allowing homeowners to appeal directly to the Board of Review. These changes were not communicated to Detroit homeowners in individualized notices but were announced through news articles and during a public City Council Meeting.

Plaintiffs' complaint brings three counts: Count I alleges the denial of due process in violation of the United States Constitution under 42 U.S.C. § 1983 against the Detroit and Michigan Defendants; Count II alleges the denial of due process in violation of the Michigan Constitution against the Detroit and Michigan Defendants; and Count III alleges unjust enrichment against Wayne County. Plaintiffs seek an order 1) declaring that their constitutional right to due process was violated through lack of timely notice of their property tax assessments and subsequent inability to appeal those assessments in 2017; 2) requiring the Detroit Defendants to allow homeowners to appeal their 2017 property taxes retroactively; and 3) requiring the Detroit Defendants (and, to the extent that they take future responsibility for Detroit assessments, the Michigan Defendants) to comport with their constitutional due process obligations by ensuring future assessment notices are sent in enough time to allow homeowners to appeal; or 4) if mailings are delayed, automatically extending appeal deadlines by 30 days after the date of mailing with clear, individualized notice of the extension given in writing to each property owner.

## II. Legal Standard

Defendants move to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Such motions "fall into two general categories: facial attacks and factual attacks." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack "is a challenge to the sufficiency of the pleading itself. On such a motion, the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party." *Id.* On the other hand, a factual attack is "a challenge to the factual existence of subject matter jurisdiction. On such a motion, no presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.*

Here, the Detroit Defendants aver they are presenting a factual attack on the complaint and ask the Court to consider a number of documents outside the pleadings. They argue that these documents show taxpayers were afforded a modified assessment review process in 2017 and that thousands of taxpayers took advantage of that process. Plaintiffs, on the other hand, state Defendants have brought a facial attack and that the Court should not consider any outside materials. The Court agrees with Plaintiffs that Defendants present a facial attack. There is no need to consider any documents beyond the pleadings in the resolution of the motions before the Court.

## III. Analysis

Defendants argue that the Court lacks subject matter jurisdiction over Plaintiffs' federal due process claims. And without a federal claim, Defendants urge the Court to decline to exercise supplemental jurisdiction over the state law claims. Alternatively, Defendants argue Plaintiffs' state law claims fail for a number of reasons.

### A. Plaintiffs' Federal Due Process Claims

Defendants argue that Plaintiffs' federal due process claims are barred by the Tax Injunction Act ("TIA") and principles of comity. Plaintiffs respond by arguing their claims fall outside the scope of both doctrines.

The TIA provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The TIA serves as "a jurisdictional barrier to the federal courts for claims of declaratory or injunctive relief brought by a party aggrieved by a state's administration of its taxing authority." *Pegross v. Oakland Cnty. Treasurer*, 592 F. App'x 380, 384 (6th Cir. 2014); *see also Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 522 (1981) (stating that the TIA "was first and foremost a vehicle to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes"). The Supreme Court has noted that the TIA does not prevent federal court interference with all aspects of state tax administration, but rather bars claims that disrupt "the collection of revenue." *Hibbs v. Winn*, 542 U.S. 88, 105 (2004). The doctrine of comity "prohibits 'taxpayers from asserting § 1983 actions against the validity of state tax systems in the lower federal courts.'" *Chippewa Trading Co. v. Cox*, 365 F.3d 538, 541 (6th Cir. 2004) (quoting *Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 116 (1981)). This principle "reflects some of the same concerns that led Congress to enact the [TIA]," but "it stands on its own bottom, and extends to cases seeking monetary damages as well as injunctive or other equitable relief." *Id.* at 541 (citing *McNary*, 454 U.S. at 110; *In re Gillis*, 836 F.2d 1001, 1006 (6th Cir. 1988)).

5

Here, a review of the complaint reveals that the crux of Plaintiffs' claims is a challenge to their tax liability or delinquency.  *See, e.g.*, ECF No. 1, PgID 2 ("By denying homeowners an opportunity to appeal and *lower frequently over-assessed property taxes*, the Detroit government . . . le[ft] many homeowners no recourse but to pay more than they should owe, face delinquency, or even fall prey to property tax foreclosure.") (emphasis added).  Indeed, Plaintiffs seek, in part, the ability to retroactively appeal their 2017 property tax assessments.  *See Hibbs*, 542 U.S. at 99 (to determine if the TIA bars a suit, "it is appropriate, first, to identify the relief sought").  Thus, Plaintiffs' claims, if successful, would disrupt the collection of tax revenue, which is the type of claim the TIA bars in federal court.  That Plaintiffs frame their claims as an attack on the adequacy of the notice they received does not alter this conclusion.  *Cf. Hammoud v. Cnty. of Wayne*, No. 15-cv-14461, 2016 U.S. Dist. LEXIS 117831, at *6, 11-12 (E.D. Mich. Sept. 1, 2016), *aff'd* 697 F. App'x 445 (6th Cir. 2017) (holding the TIA barred a claim challenging tax foreclosure proceedings where the plaintiffs alleged they had not received proper notice of tax delinquencies and did not have a meaningful opportunity to be heard).

Plaintiffs rely on *Direct Mktg. Ass'n v. Brohl*, 575 U.S. 1 (2015), to argue their claims fall beyond the TIA's scope.  There, the plaintiff sought to enjoin a Colorado law that required retailers that do not collect sales or use tax to notify customers of their use-tax liability and to report that tax information to customers and the state.  *Id.* at 4.  The Supreme Court noted that "[t]he TIA is keyed to the acts of assessment, levy, and collection themselves" and found that the notice and reporting obligations at issue were part of information gathering, which is a phase of tax administration that occurs before

6

assessment, levy, or collection. *Id.* at 8-12.  The Court acknowledged that enforcement of the law "may improve Colorado's ability to assess and ultimately collect its sales and use taxes from consumers," *id.* at 11, but held that a suit seeking to enjoin its enforcement would, if successful, "merely inhibit[]" those acts as opposed to "restrain" them and thus is not barred by the TIA, *id.* at 14.

Unlike the notices and reports at issue in *Direct Marketing* that the state required third parties to provide during the information gathering phase, here, the allegedly deficient notices were provided by the City of Detroit to taxpayers as part of the collection process itself.  *See id.* at 10 (defining "collection" as "the act of obtaining payment of taxes due," which begins "with the collector giving notice to each person liable to pay any taxes . . . stating the amount of such taxes . . .") (quotation marks and citation omitted).  Thus, *Direct Marketing*, a case where the plaintiff was "not challenging its own or anyone else's tax liability or tax collection responsibilities," *see id.* at 19 (Ginsburg, J., concurring), does not lead to a conclusion that this case falls outside the ambit of the TIA.

The TIA only bars Plaintiffs' claims, however, if there is a state remedy that is "plain, speedy and efficient."  *See* § 1341.  Similarly, the doctrine of comity applies if there is a state remedy that is "plain, adequate, and complete."  *See Chippewa Trading Co.*, 365 F.3d at 542 (citations omitted).  The Supreme Court has held that the two standards are similar.  *See McNary*, 454 U.S. at 116 n.8.  In both cases, the standard is satisfied if there is a state remedy that provides the taxpayer with a full hearing and judicial determination at which the taxpayer may raise any federal constitutional objections to the tax.  *See Rosewell*, 450 U.S. at 514; *Gillis*, 836 F.2d at 1010.

7

Michigan law provides a comprehensive scheme of administrative and judicial review that Plaintiffs could have pursued to challenge the underlying property tax assessments. Yet, Plaintiffs argue that the allegedly untimely and deficient assessment notices at issue here left available state remedies "virtually inaccessible." (*See* ECF No. 28, PgID 467.) Even if Plaintiffs are correct the notices they received were deficient, to hold that this deficiency renders available state remedies inadequate would open the door to federal courts handling state tax disputes whenever a party claims to have received inadequate notice. This would run contrary to the congressional intent evinced by the TIA to "limit drastically" federal court interference with state tax systems. *See California v. Grace Brethren Church*, 457 U.S. 393, 413 (1982) (noting that to be faithful to this intent, courts "must construe narrowly the 'plain, speedy and efficient' exception to the Tax Injunction Act").

Here, Plaintiffs concede that Defendants both extended the time to appeal to the Board of Assessors as well as waived that appeal, allowing homeowners to appeal directly to the Board of Review, due to the delayed mailings in 2017. And some Michigan courts have even held that the Michigan Tax Tribunal ("MTT") may retain jurisdiction over an appeal absent a prior protest before the Board of Review where the taxpayer did not receive adequate notice. *See Pac. Props., LLC v. Twp. of Shelby*, No. 249945, 2005 Mich. App. LEXIS 550, at *12 (Mich. Ct. App. Mar. 1, 2005); *Parkview Mem'l Ass'n v. City of Livonia*, 454 N.W.2d 169, 171 (Mich. Ct. App. 1990). While Plaintiffs argue the caselaw on this point is not clear, Plaintiffs do not allege that they attempted to appeal directly to the MTT but were unable to do so. Moreover, "application of [the TIA] depends on whether a state remedy was at some time available

to the taxpayer and the taxpayer's failure to win in state court or to use the remedy properly does not negate the existence of the remedy." See *Sacks Bros. Loan Co. v. Cunningham*, 578 F.2d 172, 175 (7th Cir. 1978); see also *Aluminum Co. of Am. v. Dep't of Treasury*, 522 F.2d 1120, 1125 (6th Cir. 1975). And to the extent Plaintiffs seek to vindicate their constitutional right to due process, their § 1983 claims can be heard by Michigan state courts.[1]

In sum, Plaintiffs' due process claims implicate the Tax Injunction Act and principles of comity. Because there is a state remedy that is plain, speedy, and efficient, this Court, a federal court, lacks subject matter jurisdiction over these claims. Count I of Plaintiffs' complaint, alleging denial of due process under the United States Constitution, is therefore dismissed without prejudice to refiling in the appropriate state forum.

B. **Plaintiffs' State Law Claims**

Because the Court is dismissing Plaintiffs' federal law claim, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims. See 28 U.S.C. § 1367(c)(3); *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims . . . ."). Thus, the Court need not address the numerous issues raised by the parties with regard to these

---

[1] Plaintiffs cite to *Morningside Cmty. Org. v. Wayne Cnty. Treasurer*, No. 336430, 2017 Mich. App. LEXIS 1504, at *4 (Mich. Ct. App. Sept. 21, 2017), to argue state courts are unlikely to hear this case because it may require an evaluation of their tax assessments. By making this argument, however, Plaintiffs appear to concede that they are ultimately challenging the underlying property tax assessments, which confirms that this case falls within the scope of the TIA.

claims. Counts II and III of Plaintiffs' complaint, alleging denial of due process under the Michigan Constitution and unjust enrichment, are also dismissed without prejudice.

### IV. Conclusion

For the foregoing reasons, Defendants' motions to dismiss are GRANTED, and this case is DISMISSED WITHOUT PREJUDICE.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: March 12, 2021

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 12, 2021, by electronic and/or ordinary mail.

s/Lisa Bartlett
Case Manager